

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-24-1995

# Liberty Mutual v Ward Trucking

Precedential or Non-Precedential:

Docket 94-3377

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Liberty Mutual v Ward Trucking" (1995). *1995 Decisions.* Paper 61.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/61

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

LIBERTY MUTUAL INSURANCE COMPANY
         and
LIBERTY MUTUAL FIRE INSURANCE COMPANY,
                  Petitioners

                  vs.

WARD TRUCKING CORP.,
                  Respondent

         and

THE HONORABLE GUSTAVE DIAMOND,
District Judge, United States District Court
for the Western District of Pennsylvania
                  Nominal Respondent

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 94-cv-00559)

_____

Argued
November 8, 1994
Before:  BECKER, MANSMANN and ALITO, <u>Circuit</u> <u>Judges</u>.

(Filed February 24, 1995)

_____

Edward A. Greenberg, Esquire (ARGUED)
Daller, Greenberg & Dietrich
7111 Valley Green Road
Valley Green Corporate Center
Fort Washington, PA  19034

         Counsel for Petitioners

Arlin M. Adams, Esquire (ARGUED)
Carl A. Solano, Esquire
Schnader, Harrison, Segal & Lewis
1600 Market Street
Suite 3600

Philadelphia, PA  19103-4252

Daniel D. Harshman, Esquire
Pietragallo, Bosick & Gordon
One Oxford Centre
38th Floor
Pittsburgh, PA  15219

Counsel for Respondent

_____

OPINION OF THE COURT

_____

MANSMANN, Circuit Judge.

This case comes to us by way of a petition for writ of mandamus filed by the defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (collectively, "Liberty Mutual").  Faced with Liberty Mutual's second notice of removal based on diversity jurisdiction, the United States District Court for the Western District of Pennsylvania granted Plaintiff Ward Trucking Company's ("Ward") motion for remand without giving Liberty Mutual an opportunity to respond.  Liberty Mutual asserts that in doing so, the district court acted without authority, and asks for our review.  We are, therefore, once again required to address the parameters of a district court's statutorily defined power to remand under 28 U.S.C. § 1447(c) and the scope of Congress' prohibition on appellate review of remand orders set forth in 28 U.S.C. § 1447(d).

I.

On May 11, 1993, Ward instituted a civil action by writ of summons in the Court of Common Pleas of Allegheny County,

Pennsylvania against Liberty Mutual, its insurers.[1]  Thereafter, Ward filed a seven-count complaint in assumpsit and tort, asserting that Liberty Mutual mishandled claims, reserves and premiums under various insurance policies.  Paragraph 52 of the complaint stated that "the amount of damages resulting from the breach of duty and/or breach of contract are presently unknown . . .", and the addendum clause in six of the seven counts requested an unspecified amount in damages in excess of the jurisdictional limits of the Arbitration Division of the Court of Common Pleas, currently $25,000.

Count III of the complaint set forth a claim under Pennsylvania's Bad Faith Statute, 42 Pa. C.S.A. § 8371, which authorizes an action for an insurer's bad faith toward its insured and allows for an award of interest on the claim at issue in the amount equal to the prime rate of interest plus 3%, punitive damages and the assessment of attorneys fees.  Count III's addendum clause requested "an amount exceeding the jurisdictional limits of [the Court of Common Pleas], inclusive of interest equal to prime plus 3%, punitive damages, costs and attorneys fees."

---

[1].      The parties are engaged in two other lawsuits.  On May 24, 1991, Ward commenced an equity action in the Court of Common Pleas of Blair County, Pennsylvania against Liberty Mutual, alleging breach of fiduciary and contractual duties, and seeking an accounting and a declaration of the amount of premiums, if any, Ward owes to Liberty Mutual.  This action has since been transferred to Allegheny County, Pennsylvania.  On June 11, 1993, Liberty Mutual commenced an action against Ward in the United States District Court for the Eastern District of Pennsylvania, alleging that Ward failed to pay a past-due insurance premium.

On July 7, 1993, Liberty Mutual filed a notice of removal with the United States District Court for the Western District of Pennsylvania, alleging federal diversity jurisdiction under 28 U.S.C. § 1332. While both the writ and the complaint, which were attached to the notice of removal, stated that Ward is a Pennsylvania citizen and Liberty Mutual is a citizen of Massachusetts, neither document showed that Ward's damages exceed $50,000, the amount in controversy requirement of federal diversity jurisdiction. Consequently, in an attempt to establish this monetary threshold, Liberty Mutual attached counsel's affidavit to its removal notice, setting forth his personal belief that Ward's damages were greater than $50,000.

On July 19, 1993, Ward filed a motion to remand, which was subsequently amended on August 2, 1993, challenging, inter alia, Liberty Mutual's failure to show the requisite amount of damages for diversity jurisdiction. On July 28, 1993, Liberty Mutual filed a response to Ward's original remand motion and on August 20, 1993, responded to Ward's amended motion. On November 3, 1993, the district court issued a memorandum opinion and order, granting Ward's amended motion to remand and returning the case to state court. Citing to our decision in Foster v. Mutual Life Marine & Island Ins. Co., 986 F.2d 48 (3d Cir. 1993),[2] the

[2]. In Foster, after affirming a remand order which was based on the doctrines of abstention and comity, we took the opportunity to resolve the question as to when the thirty-day period for removal in the first paragraph of 28 U.S.C. § 1446(b) is triggered. We decided that the time limit for removal is triggered when a writ of summons, praecipe or complaint provides adequate notice to the defendant of federal jurisdiction. 986 F.2d at 54.

district court rejected counsel's affidavit as evidence of Ward's damages, and held that because the writ and complaint included in Liberty Mutual's notice of removal did not establish the amount in controversy necessary to support federal jurisdiction, remand was in order.

In the course of subsequent discovery, Liberty Mutual obtained Ward's response to a document request which stated that Ward incurred $156,045.89 in attorneys fees arising out of its dispute with Liberty Mutual for the years 1987 to 1993.[3]

On April 6, 1994, Liberty Mutual filed a second notice of removal, attaching Ward's discovery response regarding attorneys fees for the purpose of establishing the required federal jurisdictional monetary amount. On April 28, 1994, Ward followed with a motion to remand, asserting, inter alia, that Liberty Mutual's second removal notice failed to establish that Ward's damages exceed $50,000. Without giving Liberty Mutual an opportunity to respond, the district court granted Ward's motion. In a memorandum opinion and order dated May 9, 1994, the district court again cited to Foster, 986 F.2d at 48, and concluded that Ward's discovery response could not be used to demonstrate the amount in controversy requirement of diversity jurisdiction. Referring to its prior remand opinion, the district court found

_____

[3]. By asking for the amount of fees Ward incurred over a number of years prior to the 1993 commencement of the Allegheny County, Pennsylvania, action, the discovery request apparently was not limited to this action. In its brief, Ward clarifies that the $156,045.89 represents fees incurred in all three of the parties' lawsuits. See n.1, supra.

that Liberty Mutual's second removal suffered from the same deficiency as the first, and concluded that remand was required. Thus, the district court issued an order returning the case to the state Court of Common Pleas.

Liberty Mutual then filed a petition for writ of mandamus, requesting that we direct the district court to vacate the May 9, 1994 remand order; reinstate the case and permit Liberty Mutual an opportunity to respond to Ward's remand motion; and find that Ward's discovery response constitutes "other paper" under the second paragraph of section 1446(b) which may establish removability. Ward, in turn, filed a motion for damages for frivolous appeal pursuant to Fed. R. App. P. 38.

II.

The threshold question before us is whether we have jurisdiction to review the district court's remand order. We must determine whether the district court's decision to remand which was made without giving Liberty Mutual the opportunity to respond to Ward's motion may be considered in light of the bar to appellate review of remand orders set forth in section 1447(d).

We turn first to the removal statutes, particularly the history of section 1447(d).

A.

Congress enacted a comprehensive statutory scheme for the removal of state court actions to federal court.  28 U.S.C. §§ 1441-1452.  Section 1441(a) provides in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Section 1446 sets forth the procedure for removing a case to federal court, and section 1447 covers procedure after removal has occurred.  Section 1447(c) specifically provides for the remand of a case that has been removed under section 1446 and delineates two categories for removal:  (1) a "defect in the removal procedure" and (2) the absence of subject matter jurisdiction:

> (c)  A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Section 1447(d), which speaks to the reviewability of remand orders, severely circumscribes our authority to review by providing that except for civil rights cases removed pursuant to 28 U.S.C. § 1443, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or

otherwise. . . ."  By adopting section 1447(d) and its statutory predecessors, Congress sought to make the judgment of a district court remanding a case final and conclusive in order to avoid the delay caused by appellate review of remand decisions.  United States v. Rice, 327 U.S. 742, 751-52 (1946).  In keeping with this policy, until 1976, section 1447(d) was construed to prohibit review of all remand orders without exception.  In re TMI Litigation Cases Consolidated II, 940 F.2d 832, 840 (3d Cir. 1991), cert. denied, ___ U.S.___, 112 S. Ct. 1262 (1992).

In 1976, the Supreme Court decided Thermtron Prod., Inc. v. Hermansdorfer, 423 U.S. 336 (1976).  There, the district court had remanded a case removed from state court on the basis of an overcrowded docket.  The plaintiffs sought a writ of mandamus from the Court of Appeals for the Sixth Circuit compelling the district court to exercise jurisdiction over the action.  The court of appeals denied the petition, relying on the bar to review in section 1447(d).

Reversing, the Supreme Court concluded that section 1447(d) operates to preclude review of only those remand orders which rely on the grounds contained in the controlling statute, section 1447(c).  The Court held that sections 1447(c) and 1447(d) must be read together and that "only remand orders issued under § 1447(c) and invoking the grounds specified therein . . . are immune from review under § 1447(d)."  Id. at 346. Acknowledging that it had declared an exception to the seemingly absolute prohibition to review in section 1447(d), the Court stated:

> There is no doubt that in order to prevent delay in the trial of remanded cases by protracted litigation of jurisdictional issues, . . . Congress immunized from all forms of appellate review any remand order issued on the grounds specified in § 1447(c), whether or not that order might be deemed erroneous by an appellate court. But we are not convinced that Congress ever intended to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute. That justice may move more slowly in some federal courts than in their state counterparts is not one of the considerations that Congress has permitted the district courts to recognize in passing on remand issues. Because the District Judge remanded a properly removed case on grounds that he had no authority to consider, he exceeded his statutorily defined power; and issuance of the writ of mandamus was not barred by § 1447(d).

Id. at 351 (citation omitted). Further, the Court recognized that mandamus was the "appropriate remedy to require the District Court to entertain the remanded action." Id. at 352.

One year later, the Supreme Court revisited the issue of section 1447(d)'s prohibition on appellate review of remand orders in Gravitt v. Southwestern Bell Tel. Co., 430 U.S. 723 (1977). In Gravitt, the plaintiffs, some of whom were citizens of Texas, filed an action in a Texas state court. After the plaintiffs dropped all claims against the only defendant alleged to be a Texas citizen, the remaining defendants removed the case to federal court on the basis of diversity jurisdiction. Following extensive discovery and pretrial activity, the plaintiffs uncovered a pleading that one of the defendants,

Southwestern Telephone Company, an allegedly Missouri citizen, had submitted in an unrelated state court proceeding. In that pleading, Southwestern had averred that it was a Texas citizen. The plaintiffs filed a motion for remand, asserting that complete diversity did not exist. Refusing to hear contrary evidence from Southwestern and citing to the doctrine of judicial estoppel, the district court held that Southwestern was estopped to allege its Missouri citizenship as a basis for diversity jurisdiction, and granted the plaintiffs' motion to remand on the grounds that subject matter jurisdiction was lacking. Southwestern commenced a mandamus proceeding to compel the district court to retain the case.

Concluding that a remand based on the doctrine of judicial estoppel was not contemplated by section 1447(c), the Court of Appeals for the Fifth Circuit held that the Supreme Court's decision in Thermtron permitted review. The court noted that the district court relied exclusively on the doctrine of judicial estoppel to grant the remand without examining whether Southwestern was a Texas citizen, and held that the doctrine could not be used to defeat Southwestern's statutory right to a federal forum. Accordingly, the court issued a writ of mandamus ordering the district court to determine whether the parties were in fact diverse. In a subsequent opinion, the panel determined that the district court was not required to inquire further into the diversity issue inasmuch as the plaintiffs did not challenge Southwestern's Missouri citizenship as a factual matter, but stood squarely on the estoppel theory as a matter of law to bar

Southwestern from asserting diverse citizenship. Sitting en banc, the court concluded that the use of doctrine of judicial estoppel was erroneous, and issued a writ of mandamus directing that the remand order be vacated.

In a tersely worded, two-page per curiam opinion, the Supreme Court reversed, not mentioning the doctrine of judicial estoppel. Gravitt, 430 U.S. at 724. The Court stated that "[t]he District Court's remand order was plainly within the bounds of § 1447(c) and hence was unreviewable by the Court of Appeals, by mandamus or otherwise", and re-emphasized the rule set down in Thermtron that remands issued pursuant to section 1447(c) are not reviewable, "whether erroneous or not". Id. at 723; Thermtron, 423 U.S. at 343.

B.

Since Thermtron and Gravitt, we have analyzed the prohibitive reach of section 1447(d) in a wide variety of circumstances. At the outset, however, in order to address the specific reviewability issue presented here and determine which of our cases speak most clearly to the issue, we must decide the precise nature of the district court's May 9, 1994 remand order. While Ward characterizes the order as "jurisdictional", Liberty Mutual describes it as based on a "defect in removal procedure". In Liberty Mutual's view, the district court remanded under the first sentence of section 1447(c) merely because it objected to the discovery response Liberty Mutual attached to its notice of removal; not under section 1447(c)'s second sentence because it found that subject matter jurisdiction was lacking. Liberty

Mutual contends that the district court never grappled with the question of jurisdiction, pointing to the absence of a finding regarding the amount in controversy between the parties as proof of its position.

Since the district court found that Liberty Mutual's two removal notices were similarly deficient and incorporated the reasoning enunciated in its first opinion into its second opinion, we consider the court's November 3, 1993 and May 9, 1994 opinions together to determine the basis for the court's May 9, 1994 remand decision. We initially observe that the court began its November 3, 1993 analysis by noting that the statute authorizing removal provides that an action is removable only if it could have initially been brought in a federal court and that the party desiring removal bears the burden of establishing the requirements of diversity jurisdiction. The issue the district court confronted in each opinion was whether the papers that Liberty Mutual placed before it established the amount in controversy requirement of diversity jurisdiction. Despite Liberty Mutual's position to the contrary, the court found that Liberty Mutual's notices of removal did not show that Ward's damages exceed $50,000. While it is true that the court refused to consider the information set forth in the discovery response attached to Liberty Ward's second removal notice in reaching its May 9, 1994 decision, the court did not remand because it concluded that Liberty Mutual violated one of the formalities related to the removal process by including an inappropriate document in the notice. Rather, the court remanded because it

concluded that Liberty Mutual failed to establish the threshold monetary amount essential to the court's jurisdiction.  We thus conclude that the court's May 9, 1994 remand order rested on jurisdictional grounds.  See Baris v. Sulpicio Lines Inc., 932 F.2d 1540, 1544 (5th Cir.), cert. denied, ___ U.S.___, 112 S. Ct. 430 (1991) ("As used in [section 1447(c)], a `procedural' defect is any defect that does not go to the question of whether the case originally could have been brought in federal district court. . .").[4]

C.

Having concluded that the district court's remand was jurisdictional, we turn for guidance to our cases which address the reviewability under section 1447(d) of a remand order based on a district court's determination that subject matter jurisdiction was lacking.  In In re TMI Litigation Cases Consolidated II, 940 F.2d 832 (3d Cir. 1991), cert. denied, ___ U.S.___, 112 S. Ct. 1262 (1992), the plaintiffs commenced actions in a Pennsylvania state court for personal and economic injuries arising out of an incident at the Three Mile Island nuclear

---

[4]. In discussing the alternative grounds for remand set forth in section 1447(c), Professor Moore has explained that section 1447(c) "makes a distinction between formal defects in removal procedure . . . [and] lack of subject matter jurisdiction", and has noted that "[a] motion to remand [under the first sentence of section 1447(c)] must be made within 30 days after removal, if the objections are of a character that can be waived, such as formal and modal matters pertaining to the procedure for removal or the non-removability of a proceeding otherwise within federal jurisdiction."  1A J. Moore & B. Ringle, Moore's Federal Practice § 0.168[4.-1] at 642, 644 (2d ed. 1993) (footnotes omitted).

facility.  The defendants removed, asserting that since the plaintiffs' claims arose under the Price-Anderson Amendments Act of 1988, 42 U.S.C. § 2011 et seq., those claims must be tried in federal court.  The plaintiffs filed a motion for remand claiming that despite Congress' explicit statement to the contrary in the Act, their claims did not "arise under" federal law.  The district court remanded for lack of federal subject matter jurisdiction.  The remand order was triggered by the court's holding that the Act, which contained the grant of federal jurisdiction upon which the defendants relied for removal, was itself unconstitutional.

In determining the threshold question concerning our jurisdiction, we reviewed the legislative and judicial history of section 1447(d) in great detail, and held that the remand order was subject to our review.  In doing so, we concluded that because "the jurisdictional determination of the district court, resting as it did upon the conclusion that the entire statutory scheme authorizing removal is unconstitutional, was not the type of federal subject matter jurisdiction decision intended to be governed by the terms of or the policy underlying section 1447(c)", section 1447(d) had no application.  Id. at 845.  In other words, since the ruling which triggered the remand order was not the routine type of jurisdictional determination involving the presence of diversity or a federal question which Congress entrusted to the district courts, our review was not prohibited by section 1447(d).  Id. at 844.

Likewise, in Aliota v. Graham, 984 F.2d 1350 (3d Cir.), cert. denied, ___U. S.___, 114 S. Ct. 68 (1993), we analyzed the reach of section 1447(d) in connection with an order remanding a removed case to a state court on the grounds that federal jurisdiction was lacking. There a defamation action had been filed in a Pennsylvania state court against five federal employees in their individual capacities. After the case was removed to federal court under section 2679(d) of the Westfall Act, 28 U.S.C. § 2671 et seq., the United States Attorney for the Western District of Pennsylvania, exercising the authority delegated by the Attorney General of the United States, certified that the five individual defendants were acting within the scope of their employment. The United States was then substituted as the sole defendant. The plaintiffs filed a motion to remand and a motion to strike the substitution of the United States, arguing that the individual defendants had not been acting within the scope of their employment when they allegedly made the defamatory comments. After conducting an evidentiary hearing, the district court entered an order striking the substitution and remanding the case to the state court. The United States filed a notice of appeal,[5] as well as a petition for mandamus seeking review of the remand.

---

[5]. We concluded that the district court's order resubstituting the originally named defendants in place of the United States was reviewable by way of an appeal under 28 U.S.C. § 1291. 984 F.2d at 1352-54.

In deciding whether the remand order was reviewable, we initially analyzed the Westfall Act and its provisions regarding removal, and determined that when a tort suit is filed in a state court and the Attorney General certifies that the employee was acting within the scope of his employment and removes the case, the district court does not have authority to remand on the grounds that the Attorney General's certification was erroneous. Id. at 1356. This determination was dictated by the terms of the Westfall Act which express Congress' intent that subject matter jurisdiction is conclusively established upon the Attorney General's certification. Id. We concluded that the district court exceeded its statutorily defined powers in section 1447(c) in remanding the case because there was no jurisdictional question before it, and held that section 1447(d) did not bar review. Id. at 1357.

Before we decided the merits of the dispute, we noted, however, that this case stood in "marked contrast to the normal jurisdictional decisions made in connection with remand . . . thus . . . fall[ing] outside the types of cases section 1447(d) was intended to cover", and cautioned that "[i]t [did] not follow from our decision that anytime the district court misinterprets a jurisdictional statute we have the authority to review the remand decision . . . [since] [s]uch an exception would obviously swallow the rule." Id. Thus, our holding was limited to the "narrow situation where the district court has relied on a factor

in its jurisdictional analysis that Congress intended to exclude from consideration of the jurisdictional issue." Id.[6]

We again had the opportunity to examine the limits of section 1447(d) in connection with a jurisdictional remand order in Carr v. American Red Cross, 17 F.3d 671 (3d Cir. 1994). Carr had commenced a personal injury action in the state courts to recover damages from Red Cross and the Osteopathic Medical Center of Philadelphia arising out of an HIV-injected blood transfusion he received during an operation. Red Cross invoked its federal charter and filed a notice of removal to the district court. Acting sua sponte, the district court remanded the case to the state court, rejecting Red Cross' contention that its charter automatically conferred federal jurisdiction over civil actions to which it is a party. After remand, Carr filed an amended complaint. In its answer, Osteopathic asserted a cross-claim for contribution and indemnity against Red Cross. Following the Supreme Court's decision in American Nat. Red Cross v. S.G., ___ U.S. ___, 112 S. Ct. 2465 (1992), which held that the Red Cross charter confers jurisdiction over civil cases to which Red Cross is a party, Red Cross again removed the action to the district court. Carr then filed a motion to dismiss Red Cross from the case and a motion for remand to the state court, asserting that

_____

[6]. Guided by our decision in Aliota, we subsequently held in Powers v. Southland Corp. 4 F.3d 223 (3d Cir. 1993), that section 1447(d) did not bar our review of a portion of a district court's jurisdictional remand order granting the plaintiff a relation back amendment because it was separate from and logically preceded the remand decision. Id. at 226-30.

the district court no longer had jurisdiction as a result of a joint tortfeasor release that Carr had given Red Cross. The district court granted Carr's motions for dismissal and remand on the basis that once Red Cross entered into the release with Carr, federal subject matter jurisdiction no longer existed. Osteopathic filed an appeal[7] and a petition for writ of mandamus directing the district court to vacate the remand order.

In considering whether section 1447(d) permitted our review, we cited our holdings in TMI Litigation and Aliota that section 1447(d) bars review of remand orders based on the routine jurisdictional determinations that Congress intends for the district courts to make. Id. at 682. Recognizing that we were presented with a "garden-variety, routine jurisdictional determination", we nonetheless expanded our remand reviewability principles and announced that "where a separable and final determination has been made by the district court, whether substantive or jurisdictional, which determination triggers remand, we will review both the underlying final order and the remand order itself." Id. at 682-83. Our decision to address the remand was based upon our serious concern that unless the remand order were reviewed, Osteopathic would not have been able to obtain review of the district court's preceding order of dismissal, and the state court would have been obligated to give

---

[7]. We concluded that the district court's order dismissing Red Cross was reviewable under 28 U.S.C. § 1291. 17 F.3d at 675-79.

full faith and credit to the unappealed decision of the federal court.  Id. at 683.

## III.

With the principles enunciated in Thermtron, Gravitt and our own cases interpreting the reach of section 1447(d) in mind, we turn to the remand order before us.  To determine whether we have the authority to review despite section 1447(d)'s prohibition, we consider two interrelated questions:  first, was the district court's order of the type that Congress intended to shield from appellate review under section 1447(d); and second, did the district court act consistently with its statutory authority defined in section 1447(c).

The district court's decision regarding Liberty Mutual's failure to establish the monetary amount essential to diversity jurisdiction is precisely the type of routine and regular jurisdictional decision that we determined in TMI and in Aliota Congress expected the district courts to make in removal cases and intended to insulate from challenge by enacting section 1447(d).  Further, the district court's remand order was not made in the context of a separable and final determination, so that the addition to reviewability that we announced in Carr does not apply.  In our view, this case is most analogous to and controlled by Gravitt.  As in Gravitt, the district court here determined that a basic element of diversity jurisdiction was lacking, and issued a remand order that falls "plainly within the grounds of § 1447(c)".  430 U.S. at 723.  Therefore, under

Thermtron, the court's order is shielded from review by section 1447(d). 423 U.S. at 336. See Bregman v. Alderman, 955 F.2d 660 (11th Cir. 1992) (even where the district court's remand order was issued without a finding as to whether diversity of citizenship in fact existed and could have been mistaken, appellate review was barred by section 1447(c) since the order was based on a lack of subject matter jurisdiction, not a defect in removal procedures).

IV.

Additionally, we conclude that section 1447(c) authorizes the district court to remand as it did, without affording Liberty Mutual an opportunity to respond to Ward's motion. As we must, we start with the plain language of the statute -- "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" -- and note that it allows and indeed compels a district court to address the question of jurisdiction, even if the parties do not raise the issue. Moreover, the general rule that federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue sua sponte applies equally in removal cases. Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987), cert. dismissed, 484 U.S. 1021 (1988). See also American Policyholders Ins. Co. v. Nyacol Products, Inc., 989 F.2d 1256, 1258-59 (1st Cir. 1993), cert. denied, ___U.S.___, 114 S. Ct. 682 (1994); Ziegler v Champion Mortg. Co.,

913 F.2d 228, 229 (5th Cir. 1990).  Thus, since a motion and response are not required (i.e., are not the basis) for jurisdictional remand orders under section 1447(c), the district court did not exceed its statutory authority by not waiting for a response from Liberty Mutual.  Stated alternatively, the absence of Liberty Mutual's response did not deprive the district court of its statutory power to remand once it determined that subject matter jurisdiction was lacking.

In support of reviewability, however, Liberty Mutual contends that the district court exceeded its section 1447(c) authority by breaching rules of fundamental fairness in not permitting it to respond.  Assuming arguendo that the process by which the district court remanded was unfair and also violative of established legal principles, it does not follow that Liberty Mutual's argument prevails, for it essentially equates error with unauthorized action.  Were this so, then every erroneous remand decision would be reviewable, and section 1447(d) would have no meaning.  If Thermtron and Gravitt teach nothing else, they instruct that when a district court exercises its power to remand under section 1447(c), section 1447(d) allows a district court to err; it necessarily follows that section 1447(d) also allows a district court to be procedurally unfair.  Just as section 1447(d) prohibits our review of the merits of a remand order that falls within the parameters of section 1447(c), it prohibits our review of the manner by which such an order was rendered.

Furthermore, our decision is in keeping with the policy of minimizing delay which underlies the section 1447(d) bar to

review.  If, despite section 1447(d)'s prohibition, parties opposing remand are permitted to invoke appellate review upon claims of a district court's unfairness, the potential for disruption and delay, which Congress sought to minimize by enacting section 1447(d), would be far-reaching.

Thus, we hold that review of the district court's remand order in this case is barred by section 1447(d).  No matter how faulty we might consider the district court's reasoning or methods, section 1447(d) prohibits us from reviewing an action the district court was empowered to take, and one that Congress intended to be final.  The dissent correctly points out that our opinion does not require a district court to grant a motion for remand on jurisdictional grounds without waiting for a response; and indeed, our decision should not be read as an imprimatur on the district court's actions.  This is a matter of applying Congress' intent in enacting the removal statutes, and it is here where we and the dissent part ways. Accordingly, having determined that we do not have jurisdiction to review, we will not address the substance of the questions presented in Liberty Mutual's petition.

V.

Ward requests that we impose damages under Federal Rule of Appellate Procedure 38 against Liberty Mutual for having filed the petition for writ of mandamus.  Ward characterizes the petition as frivolous and asserts that the issue Liberty Mutual raises is completely lacking in merit   .
Rule 38 states:

<u>Damages for Delay</u>
      If a Court of Appeals shall determine
that an appeal is frivolous, it may award
just damages and single or double costs to
the appellee.

Fed. R. App. P. 38.

      We employ an objective standard in determining whether
an appeal is frivolous.  <u>Hilmon Co. (V.I.) v. Hyatt Int'l</u>, 899
F.2d 250, 253 (3d Cir. 1990).  We impose damages under Rule 38
only when an appeal is frivolous.  <u>Mellon Bank Corp. v. First
Union Real Estate Equity and Mortg.</u>, 951 F.2d 1399, 1413 (3d Cir.
1991).  We find that Liberty Mutual raised a novel question in
its petition regarding the parameters of sections 1447(c) and
1447(d), and presented a meritorious argument in favor of
reviewability.  Thus, we will not impose Rule 38 damages against
Liberty Mutual.


                              VI.

      Because we do not have jurisdiction to review under 28
U.S.C. § 1447(d), we will dismiss Liberty Mutual's petition for
writ of mandamus.  Having determined that Liberty Mutual's
petition was not frivolous, we will deny Ward's motion for
damages pursuant to Fed. R. App. P 38.

Liberty Mutual Ins. Co. & Liberty Mutual Fire Ins. Co. v. Ward Trucking Corp. & The Hon. Gustave Diamond, No. 94-3377

BECKER, Circuit Judge, dissenting.

Nothing is more central to the regime of federal civil procedure than the principle of notice and opportunity to be heard. This appeal is from an order of the district court that granted defendant's motion to remand a removed case back to the state court on the ground that the plaintiff had not demonstrated sufficient damages to support subject matter jurisdiction, without affording plaintiff notice and an opportunity to be heard, even by a simple letter memorandum, on the question whether a dispute existed as to the existence of jurisdictional amount.[8] The majority blesses this procedure. I cannot.

Section 1447(c) authorizes such remand where "it appears that the district court lacks subject matter jurisdiction." I do not see how a deficiency can "appear" unless the party opposing the remand can say at least something about the matter, and hence I read section 1447(c) as requiring at least minimal notice and opportunity to be heard. In my view, the majority's crabbed and rigid reading of section 1447(c), which gives rise to an egregious departure from bedrock principle, is unsustainable. The majority's defensive statement that section 1447(d) also "allows a district court to be

_____

[8]. I agree with the majority opinion's conclusion that the remand order at issue here was "jurisdictional," rather than one based on a "defect in removal procedure." Maj. Op. at 13.

procedurally unfair," Maj. Op. at 21, is as startling as it is distressing.

Nor do I think that we would violate section 1447(d) by reviewing this remand order. Our opinion in Air-Shields, Inc. v. Fullam, 891 F.2d 63 (3d Cir. 1989), holds that when the district court does not comply with the requisites of section 1447(c), section 1447(d) does not shelter a remand order from review. If, as I believe, section 1447(c) requires an opportunity to respond before remand may be ordered, then that is as much one of "the parameters of a district court's statutorily defined power to remand under 28 U.S.C. § 1447(c)," Maj. Op. at 2, as the holding of Air-Shields that sua sponte remands cannot be ordered after the 30 day time limit. In short, I cannot conceive that either the district court's admittedly broad remand power under section 1447(c) or the delay avoidance policy of section 1447(d) renders a district court's ex parte determination that it lacks subject matter jurisdiction, made without notice or opportunity to be heard, inviolate and unreviewable. This is especially so in a case such as this where the district court is remanding for the second time.

Because the district court did not offer notice and an opportunity to be heard, even minimally, it acted in excess of its authority in entering the remand order, and as a result, section 1447(d) does not bar review thereof.[9] I would therefore

---

[9]. The majority opinion makes much of Aliota v. Graham, 984 F.2d 1350 (3d Cir.), cert. denied, 114 S. Ct. 68 (1993), and Carr v.

grant Liberty Mutual's petition for writ of mandamus and direct the district court to allow Liberty Mutual to respond to Ward Trucking's remand motion before ruling upon it. These views are informed not merely by my sense of the fundaments of our judicial polity, but also by a venerable history, with which I begin.

I.  § 1447(c) AND THE REQUIREMENT OF NOTICE AND OPPORTUNITY TO BE HEARD

A.  Origins of the Statutory Remand Power

The remand power currently embodied in section 1447(c) originally required district courts in all cases to give the affected parties notice and an opportunity to be heard before remanding for a lack of jurisdiction. Section 1447(c) had its genesis in the Judiciary Act of 1875. Section 5 of the Act provided:

> That if, in any suit commenced in a circuit court or removed from a State court to a circuit court of the United States, it shall appear to the satisfaction of said circuit court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court, or that the parties to said suit have

(..continued)
American Red Cross, 17 F.3d 671 (3d Cir. 1994). The discussion of these cases, however, is besides the point. No one argues that the remand order at issue here was was anything but a jurisdictional remand based on a non-constitutional, non-severable determination that the requisite amount in controversy had not been established. The real question is whether the district court entered its remand order in a manner authorized by section 1447(c), in which case the reviewability bar of section 1447(d) applies, or whether the district court exceeded its authority by remanding without first offering to Liberty Mutual notice and an opportunity to be heard, in which case we may review the remand order. Thus, Air-Shields is the controlling precedent, as explained infra Part II.

been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said circuit court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed as justice may require, and shall take such order as to costs as shall be just; but the order of said circuit court dismissing or remanding said cause to the State Court shall be reviewable by the Supreme Court on writ or error or appeal, as the case may be.

Act of March 3, 1875, ch. 137, § 5, 18 Stat. 472 (emphasis supplied). At that time circuit courts were federal trial courts, and so, under this act, the trial court was directed to remand an action if, inter alia, "it shall appear to [its] satisfaction . . . that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of" the court.[10]

That this provision should be interpreted as containing a requirement that the trial court hear from the affected parties before remanding is shown by the Supreme Court's opinion in Morris v. Gilmer, 129 U.S. 315, 9 S. Ct. 289 (1889). That case involved an appeal from the circuit court for the Middle District of Alabama. The plaintiff, a recent Alabama citizen and resident claiming to be a Tennessee citizen, had filed suit against defendants who were citizens of Alabama. The defendants moved to dismiss, arguing that the court lacked jurisdiction because the

_____

[10]. The court might also dismiss, since this provision governed both removed actions and ones originally filed in the circuit courts.

plaintiff was actually an Alabama citizen. After considering affidavit and deposition testimony, "and after argument by counsel for the respective parties," the court denied the motion. Id. at 321, 9 S. Ct. at 291 (emphasis supplied). When the plaintiff prevailed on final judgment, the defendants appealed.

Not reaching other, substantive questions presented by the appeal, the Supreme Court concluded that the circuit court should have dismissed the case under section five of the Judiciary Act of 1875. Id. at 324–25, 9 S. Ct. at 292. The court explained that if the plaintiff had not changed his state of citizenship to Tennessee, the circuit court was obliged to dismiss the suit for lack of jurisdiction. Interpreting the statute, the Court explained that

> this duty arose only when it appeared to the satisfaction of the court that the suit was not one within its jurisdiction. But if the record discloses a controversy of which the court cannot properly take cognizance, its duty is to proceed no further, and to dismiss the suit; and its failure or refusal to do what, under the law applicable to the facts proved, it ought to do, is an error . . . .

Id. at 325, 9 S. Ct. at 292. This duty comes into play whenever the court determines that jurisdiction is lacking, for "the court is bound to ask and answer [the jurisdictional question] for itself, even when not otherwise suggested," id. at 326, 9 S. Ct. at 292 (quoting Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382, 4 S. Ct. 510, 511 (1884)). Moreover, and more to the point,

> the statute does not prescribe any particular mode in which such fact [the lack of jurisdiction] may be

> brought to the attention of the court. It may be done
> by affidavits, or the depositions taken in the cause
> may be used for that purpose. However done, it should
> be upon due notice to the parties affected by the
> dismissal.

Id. (emphases supplied).

Thus, although the Supreme Court concluded that lack of jurisdiction was manifest from the record before the circuit court, and hence that the court erroneously failed to dismiss the case in compliance with the substance of section five, id. at 328-29, 9 S. Ct. at 293, the Court was nonetheless satisfied that the circuit court had complied with section five's procedural strictures:

> In the case before us the question [of subject matter
> jurisdiction] was formally raised, during the progress
> of the cause, by written motion, of which the plaintiff
> had due notice, and to which he appeared and objected.
> So that there can be no question as to any want of
> opportunity for him to be heard, and to produce
> evidence in opposition to the motion to dismiss.

Id. at 327-28, 9 S. Ct. at 293 (emphases supplied).

The court distinguished this case from Hartog v. Memory, 116 U.S. 588, 6 S. Ct. 521 (1886). There, although the complaint properly alleged diversity jurisdiction, the defendant did not challenge the citizenship allegations until after receiving an unfavorable verdict. The Supreme Court said that

> if, from any source, the court is led to suspect that
> its jurisdiction has been imposed upon by the collusion
> of the parties or in any other way, it may at once of
> its own motion cause the necessary inquiry to be made,
> either by having the proper issue joined and tried, or
> by some other appropriate form of proceeding, and act
> as justice may require for its own protection against
> fraud or imposition . . . .

Id. at 591, 6 S. Ct. at 522 (quoted in Morris, 129 U.S. at 327, 9 S. Ct. at 292-93) (emphases supplied). The Morris Court contrasted the actions of the circuit court in its case with those of the trial court in Hartog, which had

> summarily dismissed the action, upon the ground solely of want of jurisdiction, without affording the plaintiff any opportunity whatever to rebut or control the evidence upon the question of jurisdiction.

Morris, 129 U.S. at 327, 9 S. Ct. at 293 (emphasis supplied). The trial court's failure to give the plaintiff an opportunity to be heard before dismissing for lack of jurisdiction was enough to warrant the Supreme Court's reversing the order of dismissal and remanding for further proceedings. Id. Thus, the Supreme Court read section five as requiring that the trial court provide the affected parties with notice of its intent to remand, i.e., to rule on the existence of subject matter jurisdiction, as well as an opportunity to be heard.

<u>B. Evolution of Section 1447(c)</u>

Nothing in the subsequent evolution of section 1447(c) from section five of the Judiciary Act of 1875 forward demonstrates an intent to abrogate the salutary restriction described above, i.e., that the (original) statutory power of the federal trial courts to remand for lack of jurisdiction required that remand orders be entered only after giving the affected parties notice and an opportunity to be heard. The following discussion of the evolution of section 1447(c) does not, for the most part, treat the companion development of the bar on appellate review of remand orders now expressed in 28 U.S.C. 1447(d), for the point of the discussion is to show that section 1447(c) should be held to require district courts to give notice and an opportunity to be heard to the parties before remanding a removed case. Once that is demonstrated, section 1447(d) ceases to be a problem because that section does not bar review of an order entered in excess of the district court's authority.

Section five was modified by the Judiciary Act of 1887, which repealed the provision allowing review of remand orders "on writ or error or appeal." <u>See</u> Act of March 3, 1887, ch. 373, §§ 2, 6, 24 Stat. 552. The provision authorizing remand for lack of jurisdiction, however, was unaffected by the 1887 act (or by the 1888 act correcting errors in the enrollment of the 1887 act, Act of March 3, 1887, ch. 866, 25 Stat. 433). <u>State of Minnesota v. Northern Sec. Co.</u>, 194 U.S. 48, 65, 24 S. Ct. 598, 602 (1904);

<u>Waite v. City of Santa Cruz</u>, 184 U.S. 302, 325, 22 S. Ct. 327, 335 (1902).

In 1911, Congress codified the Judicial Code. Act of March 3, 1911, ch. 231, 36 Stat. 1087. Aside from not resurrecting the repealed reviewability provision, the 1911 act re-enacted section five's remand provision almost verbatim. Act of March 3, ch. 231, § 37, 36 Stat. 1098. Thus, the 1911 Code displays no intent to eliminate the notice-and-hearing requirement.

The 1948 re-codification of the Judicial Code and the 1949 corrections thereto produced the remand provision's next change in form. <u>See</u> Act of June 25, 1948, ch. 646, § 1447, 62 Stat. 869, 939, amended, Act of May 24, 1949, ch. 139, § 84, 63 Stat. 89, 102. As a result of these changes, the new 28 U.S.C. § 1447(c) read (with emphasis supplied):

> If at any time before final judgment <u>it appears that the case was removed improvidently and without jurisdiction</u>, the district court shall remand the case, and may order the payment of costs.

Again, as the Supreme Court has explained, the change from the 1911 Judicial Code to section 1447 was "no[t] inten[ded] to change the prior law substantively," but was meant "to recodify the pre-1948 law without material change insofar as the provisions of §§ 71 and 80 of the old Code here relevant were

concerned." Thermtron, 423 U.S. at 350 n.15, 96 S. Ct. at 592 n.15.[11]

Moreover, the "it appears" language carried through the re-codification, albeit with minor modification:  the statute dropped the modifier "to the satisfaction of the district court" (and switched from the future to the present tense).  The elimination of court-centered language from the requirement that the lack of jurisdiction "appear" moves in the opposite direction of what one would expect if Congress intended to delete a requirement that courts give parties notice and an opportunity to be heard before remanding cases for lack of subject matter jurisdiction.  Thus, the requirement, still in effect in the Judicial Code of 1911, survived re-codification in 1948.

> The current version of section 1447(c),
> A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C.A. § 1447(c) (1994), results from one of many amendments to the Judicial Code made by Congress in 1988.  See Judicial

---

[11]. Although the dissent in Thermtron was less sanguine than the majority that no change was intended by the 1948 re-codification, see Thermtron, 423 U.S. at 359-60, 96 S. Ct. at 597 (Rehnquist, J., dissenting), it offered no evidence of the type of "changes in substance" that were intended, id. at 360, 96 S. Ct. at 597, and at all events, the language relevant here -- the intact provision that the lack of jurisdiction shall "appear" -- remained.  See infra.

Improvements and Access to Justice Act of 1988, Pub. L. 100-702, 102 Stat. 4642.  The two sentences of this version of section 1447(c) were produced by splitting up the sole sentence of the pre-amendment provision.  In doing so, Congress replaced the two prior authorized remand grounds -- if a case was removed "improvidently," or if a case was removed "without jurisdiction" -- with, respectively, a sentence authorizing remands of cases for a "defect in removal procedure" and one authorizing remands for a "lack[ of] subject matter jurisdiction."  See Rothner v. City of Chicago, 879 F.2d 1402, 1411 & n.7 (7th Cir. 1989).  The scanty legislative history of this change (a mere two paragraphs), see H.R. REP. NO. 100-889, 100th Cong., 2d Sess. 72 (1988), reprinted in 1988 U.S.C.C.A.N. 5982, 6033; see also 134 CONG. REC. S16284, S16308 (daily ed. Oct. 14, 1988); Court Reform and Access to Justice Act:  Hearings on H.R. 3152 Before the Subcomm. on Courts, Civil Liberties and the Administration of Justice of the House Comm. on the Judiciary, 100th Cong., 1st & 2d Sess. 97-98 (1987-1988), reveals no intent to change the requirements for district court remands, other than to require that motions for remands for removal procedure defects be made within thirty days of removal.  Importantly, the statute retained (without change) the operative phrase, "it appears."

## C.  Consistency with Judicial Policy

As the foregoing analysis shows, section 1447(c) requires the district court to give the affected parties notice

and an opportunity to be heard before remanding a case. This makes sense, for subject matter jurisdiction -- although a threshold issue -- is not something fit for judicial notice, and the law and facts of a given case must generally be determined, in our adversary system, by the court, <u>after hearing from the interested parties</u>.[12]

More specifically, district courts are obligated to listen to the affected parties before dismissing a case for lack of subject matter jurisdiction. We have explained this in <u>Neiderhiser v. Borough of Berwick</u>, 840 F.2d 213, 216 n.6 (3d Cir. 1988). There, the district court had dismissed the plaintiff's action for lack of subject matter jurisdiction because it concluded, <u>sua</u> <u>sponte</u>, that the suit did not present a live case or controversy. <u>Id.</u> at 216. The fact that the district court

---

[12]. The majority's invocation of cases where the court <u>sua</u> <u>sponte</u> raised the issue of subject matter jurisdiction is not to the contrary. The practice at least of this Circuit is to allow the parties the opportunity to be heard even when <u>sua</u> <u>sponte</u> raising the issue of subject matter jurisdiction. <u>See, e.g.</u>, <u>Lunderstadt v. Colafella</u>, 885 F.2d 66, 69 (3d Cir. 1989); <u>Knop v. McMahan</u>, 872 F.2d 1132, 113 (3d Cir. 1989); <u>Lovell Mfg. v. Export-Import Bank of the United States</u>, 843 F.2d 725, 729 (3d Cir. 1988); <u>Lewis v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 771</u>, 826 F.2d 1310, 1312 (3d Cir. 1987); <u>Kiick v. Metropolitan Edison Co.</u>, 784 F.2d 490, 492 (3d Cir. 1986); <u>Stibitz v. General Pub. Utilities Corp.</u>, 746 F.2d 993, 995 (3d Cir. 1984); <u>Local Union 334, United Ass'n of Journeymen and Apprentices of Plumbing and Pipe Fitting Indus. of U.S. and Canada, AFL-CIO</u>, 628 F.2d 812, 813 (3d Cir. 1980); <u>Medlin v. Boeing Vertol Co.</u>, 620 F.2d 957, 958 & n.1 (3d Cir. 1980); <u>Jersey Central Power & Light Co. v. Local Unions 327, 749, 1289, 1298, 1303, 1309 and 1314 of Int'l Brotherhood of Elec. Workers</u>, 508 F.2d 687, 698 n.30 (3d Cir. 1975).

<u>sua</u> <u>sponte</u> considered dismissal was not a problem in itself, but the procedure used was impermissible:

> While the district court's consideration of the jurisdictional issue sua sponte was proper, the court did not afford the parties <u>the opportunity to brief</u> or present evidence on this issue. We find this lack of opportunity to be heard improper. The court below should have allowed [the plaintiff] sufficient time to present evidence <u>or otherwise respond</u> on the issue of jurisdiction before it determined that none existed.

<u>Id.</u> at 216 n.6 (emphases supplied). We did not need to remand there only because -- on the extant record -- we ruled in favor of the plaintiff, holding that subject matter jurisdiction existed.

As a general matter, the district court is required to give parties notice and an opportunity to be heard before remanding a removed case. <u>See</u> <u>Local 336, American Federation of Musicians, AFL-CIO v. Bonatz</u>, 475 F.2d 433, 437 (3d Cir. 1973) ("Even on [issues of jurisdictional fact] the record must clearly establish that <u>after jurisdiction was challenged the plaintiff had an opportunity</u> to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention.") (emphasis supplied); <u>Prakash v. American Univ.</u>, 727 F.2d 1174, 1179-80 (D.C. Cir. 1984) ("When subject matter jurisdiction is questioned, the court must, of course, satisfy itself of its authority to hear the case, and in so doing, it may resolve factual disputes. The court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction, and normally

it may rely upon either written or oral evidence. The court must, however, afford the nonmoving party `an ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'") (quoting Gordon v. National Youth Work Alliance, 675 F.2d 356, 363 (D.C. Cir. 1982) (Spotswood W. Robinson, III, C.J., concurring)).

While these cases go to jurisdictional facts, I do not see why their reasoning is not also applicable to "jurisdictional law." Indeed, in the instant case, Liberty Mutual contends that the district court adopted verbatim Ward Trucking's mistaken view of the requirements of 28 U.S.C. § 1446(b) for establishing amount in controversy, and that this error led the district court incorrectly to conclude that the plaintiff could not use discovery responses to support removal. In Liberty Mutual's submission, the district court's confusion as to jurisdictional law led the court to conclude incorrectly that Liberty Mutual had not shown a jurisdictional fact, i.e., an amount in controversy in excess of $50,000. See discussion in the margin.[13]

---

[13]. Although the majority opinion refers generally to the basis for the district court's remand order, it paints an incomplete picture. The majority notes that the district court entered its first remand order because Ward Trucking's state court complaint and writ failed to show a sufficient amount in controversy, and because the affidavit of Liberty Mutual's counsel, in which he opined that the amount in controversy exceeded $50,000, was legally insufficient. And, as the majority explains, the district court remanded the second time after it refused to consider the discovery responses that had since been submitted by Liberty Mutual in support of removal. Despite the fact that Liberty Mutual thus presented admissions of the plaintiff, and

These views are strongly supported by the discussion in

In re Continental Casualty Co., 29 F.3d 292, 294 (7th Cir. 1994),

(..continued)
not merely a statement of its own counsel's views, the majority
simply states:

> The issue the district court confronted in each opinion
> was whether the papers that Liberty Mutual placed
> before it established the amount in controversy
> requirement of diversity jurisdiction.

Maj. Op. at 12. This characterization of the issues is
incomplete.

Under the first paragraph of 28 U.S.C. § 1446(b), the
issue in the first removal and remand was whether the "initial
pleadings" filed by the defendant in the state court action
established that suit could have been brought in federal court.
See Foster v. Mutual Life Marine & Island Ins. Co., 986 F.2d 48,
54 (3d Cir. 1993) cited in Maj. Op. at 4 n.2. However, under the
second paragraph of section 1446(b), the issue in the second
removal and remand was whether Liberty Mutual had presented the
district court with "other paper" that showed an adequate amount
in controversy. Foster resolved only the question of what
constituted "pleadings" and did not define "other paper"; indeed,
several reported decisions, including one from the Middle
District of Pennsylvania, hold that discovery responses may
constitute "other paper" that can establish amount in controversy
under section 1446(b). See, e.g., Zawacki v. Penpac, Inc., 745
F. Supp. 1044, 1047 (M.D. Pa. 1990) (deposition testimony). But
Ward Trucking cited none of these cases to the district court,
instead using the Foster definition of pleadings to argue in its
remand motion that the discovery responses were inadmissible for
amount in controversy purposes. Without even asking whether
Liberty Mutual disagreed with that construction of section
1446(b) (at which time Liberty Mutual could have called these
other cases to the court's attention for consideration), the
district court entered a remand order that word for word adopted
Ward Trucking's interpretation of Foster and section 1446(b).

I do not, of course, opine as to whether Liberty Mutual
or Ward Trucking correctly interpreted section 1446(b). My
discussion is meant solely to illustrate the dangers inherent in
the majority's interpretation of section 1447(c) as authorizing
district courts to remand without giving the parties notice and
an opportunity to be heard.

where the Court of Appeals for the Seventh Circuit held that section 1447(c) does not authorize district courts to remand cases for procedural defects absent a motion by a party. In so concluding, the court stressed the importance of hearing from the affected parties:

> By acting without any motion, district judges increase the risk of error--both legal error and error in understanding the parties' desires. Ours is an adversarial system, and courts rely on lawyers to identify the pertinent facts and law. In this case the district judge stated the facts correctly but apparently was unaware of cases that had discussed the issue and reached conclusions at odds with his own. Perhaps these other cases are incorrect; we have no views on the subject. But the district court should have solicited the parties' submissions before acting, to avoid what has happened in this case--extended disputation, potentially leading to another change of forum. If the district judge should entertain the parties' views before remanding a case, then he also ought to wait for a motion . . . .

Id. at 295 (citation omitted). Because the court of appeals required the district court to hear from the parties before remanding, it concluded that the district court could not sua sponte remand on the grounds of procedural defect. See id. Although the plaintiff's ability to waive procedural defects supported the court's conclusion that district courts must await a party's motion before remanding for procedural defects, id., the independent requirement that district courts must "solicit the views of the parties" flowed from the more general concerns

about risks of error in light of the nature of our adversarial court system.[14]

---

[14]. The construction of 1447(c) described above also accords with the sound practice of many of our district court judges. See, e.g., Allergy Diagnostics Lab. v. The Equitable, 785 F. Supp. 523, 524 (W.D. Pa. 1991) (addressing arguments made by removing defendant "upon the court's raising the jurisdictional issue at a status conference"); McDonough v. Blue Cross of N.E. Penn., 131 F.R.D. 467, 470-72 (W.D.Pa. 1990) (remanding only after addressing and rejecting defendants contentions in support of jurisdiction); Mall v. Atlantic Fin. Federal, 127 F.R.D. 107, 108-09 (W.D. Pa. 1989) (although neither plaintiff nor defendants moved for remand, both plaintiff and one defendant questioned the court's jurisdiction); id. at 110 (defendant opposing remand filed supplemental brief arguing for jurisdiction); Recchion v. Kirby, 637 F. Supp. 290, 291 (W.D. Pa. 1986) ("[The district court] sua sponte addressed the propriety of removal . . . and the basis for . . . subject matter jurisdiction and ordered the parties to file briefs on the issue.").

D. Consistency with Congressional Policy

This construction of section 1447(c) accords with the policy underlying section 1447. Certainly, in curtailing review of remands issued for lack of jurisdiction, Congress did seek "to make the judgment of a district court remanding a case final and conclusive in order to avoid the delay caused by appellate review of remand decisions." Maj. Op. at 7 (emphasis supplied). But by concluding that the risk of erroneous remand orders was not great enough to outweigh the threat posed by protracted litigation over jurisdictional questions, Congress must have presupposed the exercise of judgment. Cf. Kloeb v. Armour & Co., 311 U.S. 199, 201, 204, 61 S. Ct. 213, 215-16 (1940) (where, on plaintiff's remand motion, district court took evidence before deciding to grant remand, remand was unreviewable, for the remand statutes "entrust determination concerning such matter to the informed judicial discretion of the district court") (emphasis supplied). That expectation would conform with my view that section 1447(c) requires the district court to afford the affected parties notice and opportunity to be heard before it remands cases to state court.

The assumption that district courts arrive at reasoned remand decisions, unlikely to be wrong, also underlies the decision of In re TMI Litigation Cases Consolidated II, 940 F.2d 832 (3d Cir. 1991), and supports my conclusions here. As the majority relates, that case held that section 1447(d) did not bar

review of a district court's remand order that was based on the lack of subject matter jurisdiction flowing from the district court's determination that the act giving rise to federal question jurisdiction was itself unconstitutional. Maj. Op. at 13-14. How was this court able to review the remand order, "plainly within the bounds of § 1447(c)," Gravitt, 430 U.S. at 723, without offending section 1447(d)? Because we concluded that "the jurisdictional determination of the district court . . . was not the type of federal subject matter jurisdiction decision intended to be governed by the terms of or the policy underlying section 1447(c)." Maj. Op. at 14 (quoting TMI Litigation, 940 F.2d at 845) (internal quotation marks omitted). As the majority here explains, "the ruling which triggered the remand order was not the routine type of jurisdictional determination . . . which Congress entrusted to the district courts[.]" Id. (emphasis supplied).

TMI Litigation might be distinguished on the grounds that it involved a distinction among the subject matters of district court determinations, rather than the procedures, but it supports my view that Congress did not expect district courts to accept verbatim a moving party's statement of the law without listening to the opposing party's views, for that is not a "routine" method of making judicial decisions. Given that judges are human, a court that would rule without listening is appreciably more likely to err than one that considers both

sides' input. Since we ordinarily do <u>not</u> scrutinize district courts' subject matter jurisdiction remand decisions for substantive error, it is critically important that we preserve the prophylactic requirement that the court hear first from the parties before remanding. Indeed, providing notice and an opportunity to be heard may even reduce delays, for by reducing the chances of erroneous remands, this rule makes it less likely that parties will need to remove actions more than once (where the time period permits) in order to use a subsequent removal notice to explain the governing law to the district court.

This construction of 1447(c) is also consistent with Supreme Court precedent on reviewability of remand orders. In <u>Thermtron</u>, the district court had entered an order to show cause as to why the case should not be remanded and the parties had responded to that order. <u>See</u> <u>Thermtron</u>, 423 U.S. at 339-40, 96 S. Ct. at 587. In <u>Gravitt</u>, 430 U.S. at 723, 97 S. Ct. at 1439, the district court had afforded the removing defendant an opportunity to be heard before granting the plaintiff's remand motion. <u>See</u> 416 F. Supp. 830, 831 & n.2 (1976).

## E. Summary

In conclusion, the Supreme Court early on held that remands under the 1875 forerunner of section 1447(c) required that the affected parties first be given notice and an opportunity to be heard. Nothing in the subsequent development of the remand provision was intended to abolish this requirement, which does not conflict with section 1447(d)'s underlying policy of avoiding delay. I must therefore disagree with the majority that section 1447(c) authorized the district court to remand without first allowing Liberty Mutual to respond to Ward Trucking's remand motion.

## II. § 1447(d) AND REVIEWABILITY OF THE DISTRICT COURT'S REMAND ORDER

Because the district court failed to provide Liberty Mutual an opportunity to be heard before remanding, its remand order was unauthorized. As a result, under our remand reviewability jurisprudence, section 1447(d) does not prevent us from issuing a writ of mandamus to compel the district court to remain within the bounds of its authority by awaiting Liberty Mutual's response to Ward Trucking's remand order. I elaborate on these points as follows.

A. Reviewability of Procedurally Unauthorized Remand Orders

Our opinion in Air-Shields, Inc. v. Fullam, 891 F.2d 63 (3d Cir. 1989), dictates the conclusion that remand orders entered in a manner not authorized by section 1447(c) are reviewable despite the limitations in section 1447(d). In Air-Shields, the district court sua sponte remanded a case that it concluded had been filed untimely and without a required surety bond. Id. at 64-65. Because we determined that section 1447(c) would not have allowed the district court to remand for these procedural defects outside thirty days from the filing period,[15] id. at 65, we concluded that by doing so "the district court exceeded its statutorily defined power," id. at 66 (quoting Thermtron, 423 U.S. at 351, 96 S. Ct. at 593) (internal quotation marks omitted). Thus, we were not barred by section 1447(d) from issuing a writ of mandamus directing the district court to vacate its remand order. Id.

The situation here is analogous. Since, as I have shown, notice and an opportunity to be heard before remand are "essential to action under . . . § 1447(c), then the lack [thereof] deprives a district judge of power to return a case to state court." Continental Casualty Co., 29 F.3d at 294. By granting Ward Trucking's motion to remand without allowing Liberty Mutual to respond, the district court here exceeded its

---

[15]. We did not decide whether the district court was ever permitted to remand for defect in removal procedure absent a motion by a party. See id. at 65.

statutorily defined power. I of course agree with the majority that "only remand orders issued under § 1447(c) and invoking the grounds specified therein . . . are immune from review under § 1447(d)." Maj. Op. at 8 (quoting Thermtron, 423 U.S. at 346, 96 S. Ct. at 590) (internal quotation marks omitted and emphasis supplied here). But the district court's failure to give Liberty Mutual notice and opportunity to be heard precluded this from constituting a "remand order issued under § 1447(c)."

### B.  Unauthorized Action or Unreviewable Error

While the majority does not address the Air-Shields analysis, it responds to Liberty Mutual's arguments by attacking the construction of section 1447(c) discussed above, accusing Liberty Mutual of "equat[ing] error with unauthorized action." Maj. Op. at 21.  This remonstration, however, is misdirected.

The section 1447(c) requirement that district courts hear from the parties before remanding does not, as the majority believes, dictate that "every erroneous remand decision would be reviewable."  Id.  Rather, since the district court's authority to remand a removed case extends to all situations where it finds a lack of subject matter jurisdiction after allowing the parties notice and an opportunity to be heard, the courts of appeals would review only those decisions where the district court fails to listen to the parties before remanding.  If the court receives argument from each side before acting yet still remands for lack of subject matter jurisdiction, review would generally be

unavailable, regardless of how erroneous the court may have been in its jurisdictional determination.

Indeed, the majority is itself guilty of conflating error with unauthorized action. I agree that Thermtron and Gravitt teach that "when a district court exercises its power to remand under section 1447(c), section 1447(d) allows a district court to err." Id. However, it does not as a matter of logic "necessarily follow[] that section 1447(d) also allows a district court to be procedurally unfair." Id. The majority's deduction would be sound only if procedural unfairness were merely one more form of error. But that cannot be, for to so hold would undermine the legitimacy of our procedural system. Procedural fairness is the predicate of legitimacy. And since (concomitantly) section 1447(c) does not authorize judges to remand without hearing from the parties, a district court does not exercise "its power to remand under section 1447(c)" when it remands as the district court did here, for it possesses no such power. Such conduct would not then be an "error" permitted to stand by section 1447(d) any more than would be the remand at issue in Thermtron, which was entered for docket control reasons; both actions are ultra vires.

The majority's reasoning is therefore either circular or inconsistent with Thermtron. The majority's confident assertion that "[j]ust as section 1447(d) prohibits our review of the merits of a remand order that falls within the parameters of

section 1447(c), it prohibits our review of the manner by which such an order is rendered," id. (emphasis supplied), begs the question: Does a remand entered without hearing from the removing party "fall within" section 1447(c)? Since, as I have argued, it does not, section 1447(d) is no bar to our review.

### III. CONCLUSION

I believe that the majority errs in construing section 1447(c) to authorize district courts to issue remand orders without giving the parties notice and an opportunity to be heard. Fortunately, the damage this holding does to remand jurisprudence may in time prove to be circumscribed, for nothing in the majority's opinion today requires district courts to engage in this constitutionally dubious practice.[16] Courts might never need to address this question if district courts would in the future give the notice and opportunity to be heard of which I have spoken. This would not undermine section 1447's policy of delay avoidance because, unless the district court desires to extend it, the substantive remand ruling can be made without elaborate filings or procedures.

For the foregoing reasons, I respectfully dissent.

---

[16]. It remains an open question whether such conduct violates the Due Process Clause, for Liberty Mutual has not brought a constitutional challenge.