**Patricia ENTREKIN, Plaintiff,**

v.

**FISHER SCIENTIFIC INC., Defendant.**

**No. CIV. A. 00–4363MLC.**

United States District Court,
D. New Jersey.

June 11, 2001.

---

Richard P. Flaum, DiFrancesco, Kunzman, Coley, Yospin, Bernstein & Bateman, PC, Warren, NJ, for Plaintiff.

David E. DeLorenzi, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC, Newark, NJ, for Defendant.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the motion of plaintiff Patricia Entrekin ("Entrekin") to remand the above-captioned case to the Superior Court of New Jersey, Somerset County ("Superior Court"). Defendant Fisher Scientific Inc. ("Fisher Scientific") had filed a notice to remove this case from the Superior Court to this Court. Entrekin seeks the remand of this action on the grounds that Fisher Scientific removed this action from the Superior Court in an untimely fashion. Specifically, plaintiff argues that defendant had notice, more than thirty days prior to removal, that the amount in controversy met the $75,000 threshold requirement for federal diversity jurisdiction. Entrekin also requests an award of counsel fees and costs incurred in connection with this motion. For the reasons expressed in this Memorandum Opinion, Entrekin's motion

to remand and request for counsel fees and costs are denied.

## BACKGROUND

Entrekin filed the Verified Complaint[1] in this matter in the Chancery Division of the Superior Court on or about May 23, 2000. (Verified Compl.; Aff. of Richard P. Flaum, Esq., filed 10–31–00 ("Flaum Aff.") ¶ 2.) Fisher Scientific filed its Notice of Removal on September 1, 2000. (Notice of Removal filed 9–1–00 ("Notice of Removal"), no. 1–1 on the docket.) Fisher Scientific sought removal based on 28 U.S.C. § 1441 and 28 U.S.C. § 1446, asserting that this Court has original diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332. (*Id.* ¶ 1.) According to the Notice of Removal, "[Entrekin], residing at Raritan, New Jersey, commenced this action by filing a four (4) count Verified Complaint, dated May 22, 2000, in the [Superior Court], against, [Fisher Scientific], a Delaware corporation with its principal office in Hampton, New Hampshire."[2] (*Id.* ¶ 2.)

It is necessary in this section to describe in some detail the pleadings, papers and events in the state court proceedings. According to the Verified Complaint, Entrekin commenced her employment with Fisher Scientific on December 12, 1975. (Verified Compl. ¶¶ 1–2.) The Verified Complaint provides a quite extensive review of Entrekin's employment history, particularly her past periods of disability generally due to mental health problems, and, in some cases, tardive dyskinesia, and the alleged knowledge of these periods of disability possessed by Fisher Scientific, which permitted her to return to work without any reduction in pay or loss of benefits after each period. (Verified Compl. ¶¶ 1–21.) Beginning on or about October 12, 1993, Entrekin purportedly began treatment with her current physician, Dr. Susan Peet Rowley ("Dr. Rowley"). (*Id.* ¶ 13.)

Turning to Entrekin's most important allegations, Entrekin alleges that she worked at Fisher Scientific from September of 1997 to January of 1999, when she again suffered serious mental health problems and went out on disability. (*Id.* ¶¶ 22–23.) Allegedly, this period of disability occurred, as in the past, with Fisher Scientific's knowledge and consent. (*Id.* ¶ 24.) Entrekin claims that in or around August of 1999, certain medication changes significantly improved her condition and that, in November of 1999, Dr. Rowley assigned certain tasks in order to assess whether or not she could return to work. (*Id.* ¶¶ 25–27.) Dr. Rowley allegedly cleared Entrekin for work in December of 1999. (*Id.* ¶ 28; *see also* Verified Compl. Ex. A: Evaluation of Patricia Entrekin by

1. The Court notes that the Verified Complaint filed with this Court as part of Fisher Scientific's Notice of Removal lacks the documents Entrekin apparently attached as exhibits. (Notice of Removal Ex. 1: Verified Compl.) The Court, when citing these documents, cites to the Verified Complaint attached to the affidavit of Richard P. Flaum, Esq. (Aff. of Richard P. Flaum, Esq., filed 10–31–00 Ex. A: Verified Compl.)

2. According to an affidavit of Fisher Scientific's general counsel in response to Entrekin's motion to remand: (1) Fisher Scientific is incorporated in Delaware; (2) its corporate headquarters and most of its senior officers and directors are located in Hampton, New Hampshire; (3) it has offices and facilities in several states, including New Jersey; (4) owns and operates two chemical production facilities in Bridgewater, New Jersey as well as a chemical production facility in Morris Plains, New Jersey; and (5) the "bulk" of its "production, distribution and sales operations are not located within the State of New Jersey" but are spread throughout the states in which Fisher possesses offices and facilities. (Aff. of Gary Van Domelen, Esq., dated 10–20–00 ¶¶ 1–7.)

Susan P. Rowley, M.D., for 1/99 to 12/99 at 3.) Entrekin asserts that Dr. Rowley concluded that Entrekin had returned to her baseline because of a psychological evaluation performed by Dr. Howard Mangel on December 12, 1997 and a comparison between the tasks Entrekin was able to complete in December of 1999 with the tasks she was able to perform when previously examined by Dr. Mangel. (Verified Compl. ¶¶ 29–30; *see also* Compl. Ex. B: Letter from Howard R. Mangel, Ed.D., dated 12–12–97.)

Although Dr. Rowley allegedly cleared Entrekin to return to full-time employment, the Verified Complaint states that she recommended that Fisher Scientific permit Entrekin to work half-days as a transition period. (Verified Compl. ¶¶ 30–31.) Entrekin claims that Fisher Scientific followed Dr. Rowley's earlier requests without question. (*Id.* ¶ 32.) Fisher Scientific, however, allegedly required that Entrekin return to work on a full-time basis, and Dr. Rowley therefore allegedly furnished Fisher Scientific with a note stating that Entrekin could return to full-time work without restrictions. (*Id.* ¶ 33; *see also* Verified Compl. Ex. C: Prescription Blank signed by S.P. Rowley.) Entrekin alleges that she contacted Fisher Scientific on or about December 6, 1999 and Fisher Scientific required Entrekin to be evaluated by its physicians, Priority Medical Care. (Verified Compl. ¶¶ 33–34.) After this evaluation, Priority Medical Care purportedly provided full clearance for Entrekin to return to work on December 8, 1999 without restrictions. (*Id.* ¶ 35; *see also* Verified Compl. Ex. D: Priority Medical Care Return to Work Evaluation.)

When Entrekin attempted to return to work, however, Fisher Scientific allegedly told her that Priority Medical Care had in fact added restrictions. (Verified Compl. ¶ 36.) Entrekin allegedly requested information regarding these restrictions, but Fisher Scientific supposedly refused to provide such information. (*Id.* ¶ 37.) Entrekin asserts that, if she had been able to return to work on December 8, 1999, she would have received the reinstatement of all benefits after twenty one days of work, four weeks of accrued vacation after one week of work, and full reinstatement, presumably to her position. (*Id.* ¶ 38.)

Plaintiff claims that approximately three weeks after her attempt to return to work, Deborah Sawidzial ("Sawidzial"), a human resources coordinator for Fisher Scientific, dispatched a certified letter to Entrekin stating that she was not permitted to return to work and that Entrekin must be evaluated by Dr. David Gallina ("Dr.Gallina"). (*Id.* ¶ 39; *see also* Verified Compl. Ex. H: Letter from Deb Sawidzial dated 12–28–99 ("Sawidzial Letter") at 1–2.[3]) Sawidzial allegedly further required the release of Entrekin's medical records to Dr. Gallina. (Verified Compl. ¶ 40; Sawidzial Letter at 2; Verified Compl. Ex. H: Authorization to Release Medical Information from Patricia Entrekin dated 1–4–00.[4]) Although Entrekin allegedly wanted Dr. Gallina's examination to occur immediately, the examination was scheduled for February 8, 2000 and did not actually occur until March 8, 2000. (Verified Compl. ¶¶ 40–41.) Entrekin states that Fisher Scientific informed her that, because of Dr.

3. Entrekin's Verified Complaint actually cites to an Exhibit E when referring to this certified letter. (Verified Compl. ¶ 39.) In the copy of the Verified Complaint attached to the affidavit of Richard P. Flaum, Esq., there is no Exhibit E. This letter, however, appears as part of Exhibit H.

4. Although the Verified Complaint refers to this authorization as Exhibit F, the authorization itself contains no letter or other identifying mark. Because it comes after Exhibit H, this authorization is cited as part of Exhibit H.

Gallina's findings, she could not return to work. (*Id.* ¶ 41.) According to the Verified Complaint, Fisher Scientific has refused to provide a copy of Dr. Gallina's report after numerous requests. (*Id.* ¶ 42.) Entrekin alleges that Fisher Scientific informed her that another evaluation was needed, reiterated that she could not return to work, and told her that, if she did return to work within fourteen weeks, approximately June 14, 2000, her employment would be terminated.[5] (*Id.* ¶ 43; *see also* Verified Compl. Ex. G: Letter from Susan Peet Rowley, M.D., dated 4–14–00.)

Entrekin alleges that Fisher Scientific's refusal to allow Entrekin to return to work even though she obtained clearance from her treating physician constitutes a violation of the New Jersey Law Against Discrimination ("NJLAD"). (*Id.* ¶ 44) She claims that, as a result of Fisher Scientific's conduct, "Entrekin has been deprived of her position at Fisher [Scientific], has not received any pay since December 1999, is not entitled to any benefits for any current company sponsored disability, will be terminated from her position and will lose all of her benefits which are related to employment at Fisher [Scientific]." (*Id.* ¶ 45.)

Entrekin's Verified Complaint contains four counts. Count One alleges that Fisher Scientific committed handicap discrimination in violation of the NJLAD because of the above conduct. (*Id.* ¶ 47.) Specifically, Entrekin alleges that Fisher Scientific refused to permit Entrekin to return to work when she was cleared to do so with-

out restrictions, the sole basis for this refusal was Entrekin's handicap protected by the NJLAD, and such discrimination would not have occurred in the absence of this handicap. (*Id.* ¶¶ 47–51.) Count Two claims that Fisher Scientific retaliated against Entrekin for her exercise of civil rights and opposition to its harassing conduct in violation of New Jersey's public policy, specifically alleging that Entrekin's termination constitutes retaliation in violation of public policy. (*Id.* ¶¶ 54–55.) In Count Three, Entrekin alleges that Fisher Scientific's "extreme and outrageous" conduct was designed to and did, either intentionally or recklessly, cause Entrekin to suffer extreme emotional distress. (*Id.* ¶ 58.) Finally, Count Four states that Fisher Scientific subjected Entrekin to acts of reprisal in violation of the NJLAD. (*Id.* ¶ 61.) These acts of reprisal were allegedly taken in response to Entrekin's periods of disability protected under the NJLAD and known and approved by Fisher Scientific. (*Id.* ¶ 62.) The alleged acts of reprisal or retaliation are: (1) the refusal to allow Entrekin to return to work as permitted by Entrekin's treating physician, (2) the denial of pay, (3) the loss of current benefits, (4) the refusal to cease and desist all discriminatory conduct, and (5) the threat of termination if Entrekin fails to return to work even though Entrekin has refused to permit her to return to her job. (*Id.*)

The counts allege similar injuries and seek almost the identical relief. Count One alleges that, as a direct and proximate

---

5. It is uncertain whether Entrekin claims that Fisher Scientific threatened to fire her if she tried to return to work within fourteen weeks or whether they threatened her termination if she did not return to work within fourteen weeks. The Verified Complaint states that Entrekin was informed that she would be terminated if she did return to work within fourteen weeks. Other documents, however,

clearly indicate that Entrekin was informed that she would be fired if she did not return to work within fourteen weeks. (Verified Compl. Ex. G: Letter from Susan Peet Rowley, M.D., dated 4–14–00; Flaum Aff. Ex. C: Aff. of Patricia Entrekin dated 5–19–00 ¶ 41 & Ex. D: Aff. of Susan Peet Rowley, M.D., dated 5–19–00 ¶ 44.)

result of Fisher Scientific's actions, "plaintiff will be terminated, has lost benefits, has lost back pay to which she is entitled and has suffered severe emotional distress, pain and suffering, humiliation, embarrassment, loss of income, and other severe financial losses." (Verified Compl. ¶ 52.) Similarly, Count Two alleges that Entrekin has suffered "loss of pay, loss of benefits, has been threatened with termination and has suffered severe emotional distress, pain and suffering, humiliation, embarrassment, loss of income, and other severe financial losses." (*Id.* ¶ 56.) Count Three alleges that "plaintiff has suffered severe emotional distress, pain and suffering, humiliation, embarrassment, loss of income, and other severe financial losses." (*Id.* ¶ 59.) The first three counts demand an order requiring Fisher Scientific to:

A.  Permit Patricia Entrekin to return to work immediately;

B.  Reinstat[e] all of her benefits;

C.  Provid[e] her with all back pay due and owing;

D.  Cease and desist from all discriminatory conduct;

E.  [Grant] such other and further relief as this Court deems just and proper including, but not limited to compensatory and punitive damages.

(*Id.* Counts One, Two, Three, Four.) Count Four demands the exact same relief, except the cessation of discriminatory conduct. (*Id.* Count Four.) According to Entrekin's brief in support of this motion, by allegedly being prevented from returning to work for over seven months, Entrekin lost more than $20,000.00 in back pay. (Pl., Patricia Entrekin's Br. in Supp. of Motion for Remand to State Court ("Pl.'s Br.") at 18.)

Along with her Verified Complaint, Entrekin also filed on May 23, 2000 with the Superior Court a motion, supported by affidavits from Entrekin and Dr. Rowley as well as a brief, for temporary restraints and permanent relief against Fisher Scientific. (Flaum Aff. ¶ 2 & Ex. B: Br. in Supp. of Pl.'s Order to Show Cause with Temporary Restraints dated 5–22–00 ("Pl.'s Order to Show Cause Br.") & Ex. C: Aff. of Patricia Entrekin ("Entrekin Aff.") dated 5–19–00 & Ex. D: Aff. of Susan Peet Rowley, M.D., dated 5–19–00 ("Dr. Rowley Aff.").) The Honorable Robert E. Guterl ("Judge Guterl") held two conference calls, on June 1, 2000 and June 5, 2000, regarding this motion. (Flaum Aff. ¶ 3.) Judge Guterl then issued an Order to Show Cause with Temporary Restraints, filed June 5, 2000 ("6–5–00 Order"), stating that Fisher Scientific shall show cause on July 10, 2000 why an order should not be issued providing for: (1) Entrekin's immediate reinstatement, (2) the payment of back pay to December 1, 1999, (3) the reinstatement of Entrekin's benefits retroactively to December 1, 1999, (4) the ceasing and desisting of discriminatory acts, and (5) additional relief considered just and equitable. (Flaum Aff. Ex E: Order to Show Cause with Temporary Restraints filed 6–5–00 ("6–5–00 Order") at 1–2; Flaum Aff. ¶ 3.) According to the affidavit of Richard P. Flaum, Esq., who is counsel for plaintiff ("Flaum Affidavit"), the 6–5–00 Order required Fisher Scientific to reinstate Entrekin immediately and to award her back pay and benefits as well as providing other relief. (Flaum Aff. ¶ 3.)

This 6–5–00 Order was amended on June 13, 2000, and a new Order to Show Cause with Temporary Restraints was filed ("6–13–00 Order") and faxed to counsel for Fisher Scientific on June 13, 2000. (Flaum Aff. ¶ 4 & Ex. F: Order to Show Cause with Temporary Restraints filed 6–13–00 ("6–13–00 Order").) This 6–13–00 Order provides that Fisher Scientific shall show cause on July 12, 2000 "why the . . . temporary restraints entered as of June 5,

2000 should be dissolved." (6–13–00 Order at 1–2.) Fisher Scientific, however, did not receive the faxed 6–13–00 Order, and it was supposedly re-faxed on June 14, 2000. (Flaum Aff. ¶ 5.)

According to the Flaum Affidavit, Entrekin returned to work at Fisher Scientific on June 14, 2000 but was required to watch safety films. (Flaum Aff. ¶ 6.) Flaum states that Fisher Scientific failed to permit Entrekin to work from June 15, 2000 through June 20, 2000 and, during this period, it required her to remain in a conference room without a telephone during the workday. (Id. ¶ 7.) Entrekin informed Fisher Scientific on June 20, 2000 that she needed to take off from work on June 21, 2000 to attend a court hearing in this matter, and she also requested a five-week vacation, which required management approval. (Id. ¶ 8.) Flaum avers that, regardless of the temporary restraint specifically requiring Fisher Scientific to cease and desist from all discriminatory conduct, Fisher Scientific mandated that Entrekin either provide a medical report regarding the absence or not be allowed to return to work. (Id. ¶ 9.) Flaum further avers that Fisher Scientific failed to comply with the Superior Court's requirement to provide back pay and fully reinstate Entrekin to her position. (Id.)

Fisher Scientific moved to vacate the temporary restraints. (Flaum Aff. ¶ 10 & Ex. H: Def.'s Notice of Mot. ("Def.'s Notice of Mot.").) After hearing argument on June 21, 2000, the Honorable Rosemarie Williams ("Judge Williams") issued another Order to Show Cause with Temporary Restraints ("7–3–00 Order") filed on July 3, 2000, requiring Fisher Scientific to show cause on July 12, 2000 why the temporary restraints entered June 5, 2000 should be dissolved, specifically that Entrekin be reinstated to her position with the effective date of June 5, 2000. (Flaum

Aff. ¶¶ 10–11; Flaum Aff. Ex. I: Order to Show Cause with Temporary Restraints filed 7–3–00 ("7–3–00 Order") at 1–2.) Judge Williams specified that Fisher Scientific must approve Entrekin's vacation from June 21, 2000 through and including July 12, 2000. (7–3–00 Order at 2.) The 7–3–00 Order also explicitly required Fisher Scientific to provide Entrekin with back pay to December 1, 1999, retroactively reinstate benefits to December 1, 1999, terminate discriminatory activity against Entrekin, as well as provide any other just and equitable relief. (Id.)

Entrekin subsequently applied to the Law Division of the Superior Court to hold Fisher Scientific in contempt and obtain counsel fees because of its alleged violations of the Superior Court's 6–5–00 Order, 6–12–00 Order, and 7–4–00 Order. (Id. ¶ 12 & Ex. G: Br. in Supp. of Pl.'s Motion in Aid of Litigants Rights ("Pl.'s Litigant Rights Br.") at 1.) According to Entrekin's brief in support of the motion to remand, she sought over $10,000 in counsel fees in her litigant rights motion. (Pl., Patricia Entrekin's Br. in Supp. of Mot. for Remand to State Court ("Pl.'s Br.") at 19.)

According to an affidavit of Flaum submitted in support of Entrekin's reply letter brief ("Flaum Reply Affidavit"), the parties appeared before Judge Guterl on July 12, 2000 for argument regarding Entrekin's Order to Show Cause seeking such relief as job reinstatement, back pay, compensatory and punitive damages, and reinstatement of benefits. (Aff. of Richard P. Flaum, Esq., dated 10–26–00 ("Flaum Reply Aff.") ¶ 4.) Flaum avers that, at this July 12, 2000 hearing, Judge Guterl discussed with the parties the potential resolution of the case. (Id. ¶ 5.) According to Flaum, Entrekin and Fisher Scientific agreed on or about July 12, 2000 to mediate their dispute and that, during this me-

diation, Entrekin would receive her full salary. (*Id.* ¶ 2; Flaum Aff. ¶ 13.)

Plaintiff contends that on July 13, 2000, George W. Wright ("Wright"), then-counsel for Fisher Scientific, made a settlement offer. (Flaum Aff. ¶ 19; Flaum Reply Aff. ¶¶ 8–9.) According to Flaum, an issue arising during the July 12, 2001 hearing resulted in Entrekin taking a tour of Fisher Scientific's Somerville facility. (Flaum Reply Aff. ¶ 7.) Flaum claims that Wright, following the inspection of the plant on July 12, 2001, orally offered between approximately $75,000.00 and $100,000.00 for the immediate settlement of the case. (Flaum Aff. ¶ 19.) It appears that Entrekin rejected this offer. (Pl.'s Br. at 21; Aff. of George W. Wright filed 10–31–00 ("Wright Aff.") ¶ 15.) Flaum states that he himself wrote a letter, dated September 5, 2000 ("9–5–00 Letter"), which went to his own file, although addressed to Wright, referring to the settlement negotiations and indicating Entrekin's intention to file a motion to remand based on the settlement offer. (Flaum Aff. ¶ 19 & Ex. K: Letter dated 9–5–00 from Richard P. Flaum, Esq. ("9–5–00 Letter").) According to Flaum, the settlement discussion on July 13, 2000 was "not an off the cuff/informal settlement discussion, [but] an effort by Fisher[ ] [Scientific's] counsel to explore how the matter could be resolved short of plaintiff returning to work." (Flaum Reply Aff. ¶ 8.)

Fisher Scientific, however, has a different understanding of this purported offer and what it involved. According to the affidavit of Wright filed in opposition to the motion to remand ("Wright Affidavit"), the July 13, 2000 discussions involved Fisher Scientific's offer to buy an annuity for Entrekin to compensate her until her possible entitlement for disability retirement benefits. (Wright Aff. ¶ 14.) Wright claims that he informed counsel for Entrekin that the projected cost of such an annuity could "range up to approximately $100,000.00." (*Id.* ¶ 15.) Wright claims that Entrekin's counsel never served a written demand regarding this discussion. (*Id.* ¶ 15.)

Entrekin, in response to a request from Fisher Scientific, served a Statement of Damages pursuant to New Jersey Court Rule 4:5–2, dated August 1, 2000 and received by Wright on August 7, 2000. (Notice of Removal ¶ 3 & Ex. 2: Statement of Damages Pursuant to Rule 4:5–3 dated 8–1–00 ("Statement of Damages"); Wright Aff. ¶ 7.) According to this Statement of Damages, Entrekin seeks "damages in the amount of $1 million per Count of the Complaint." (Statement of Damages.)

Any pending motions before the Superior Court were apparently not decided because the parties agreed to mediation. (Flaum Aff. ¶ 13.) With an order filed August 15, 2000 ("8–15–00 Order"), Judge Guterl directed that mediation was to occur within sixty days and stayed discovery until the completion of mediation through resolution or the inability to reach an agreement. (Flaum Aff. Ex. J: Order filed 8–15–00 ("8–15–00 Order") at 1.) Judge Guterl also ordered Fisher Scientific to pay Entrekin's salary from June 21, 2000 until the mediation's completion based on Fisher Scientific's representation that such pay will be provided at the vacation rate, without any loss of additional accrued vacation benefits. (*Id.* at 1–2.) Flaum claims that the Superior Court's previous orders continued in effect during this mediation. (Flaum Aff. ¶ 15.)

The parties engaged in mediation on August 31, 2000 and planned to schedule another mediation session. (Flaum Aff. ¶ 16.) Entrekin contends that the Mediator made proposed settlement options exceeding $75,000.00. (Pl.'s Br. at 19.) Fisher Scientific, however, filed its Notice

of Removal on September 1, 2000. (Flaum Aff. ¶ 17; Notice of Removal.) Fisher Scientific's Notice of Removal explicitly refers to the Statement of Damages and its $1,000,000.00 demands. (Notice of Removal ¶ 3.) According to the Notice of Removal, the amount in controversy requirement of 28 U.S.C. § 1441(a) is satisfied. (Notice of Removal ¶ 4.) Furthermore, it states that "this Notice of Removal is filed within thirty (30) days of Fisher Scientific's first receipt of notice that the amount in controversy exceeds the $75,000.00 jurisdictional amount requirement set forth in 28 U.S.C. § 1332(a)." (Id. ¶ 5.)

Entrekin's Notice of Intent to file a motion to remand was filed on September 29, 2000. (Notice of Intent filed 9–29–00, no. 4–1 on the docket.) Entrekin's Notice of Motion to remand was subsequently filed on October 31, 2000.[6] (Notice of Mot. filed 10–31–00, no. 7–1 on the docket.)

## DISCUSSION

A defendant may remove a claim from a state court to a federal district court pursuant to 28 U.S.C. § 1441[7] and 28 U.S.C. § 1446.[8] To qualify for removal, the cause of action must be a claim "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). One basis of original jurisdiction is diversity jurisdiction or jurisdiction over civil actions between "citizens of different States" where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).

In addition to satisfying the essential requirements of subject-matter jurisdiction,[9] the defendant must remove the

---

6. Although not mentioned by the parties, certain proceedings occurred before this Court prior to the filing of this motion to remand in connection with an application by Entrekin for a temporary restraining order. This application primarily concerned Fisher Scientific's requirement that Entrekin's employment and salary would be terminated if she failed to return to work by October 25, 2000. (Letter from Richard P. Flaum, Esq., dated 10–23–00.) This Court denied plaintiff's application for a temporary restraining order on October 24, 2000. (Minute Entry filed 10–24–00, no. 5–1 on the docket.) Entrekin was not terminated and returned to work on October 30, 2000. (Minute Entry filed 10–31–00, no. 6–1 on the docket.)

7. 28 U.S.C. § 1441(a) provides:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

8. 28 U.S.C. § 1446(a) states:

A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

9. Whenever this subject-matter jurisdiction is absent, the district court must remand the case to the state court upon either motion or sua sponte. 28 U.S.C. § 1447(c) provides:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Because neither party has raised the issue, this Court does not specifically address whether subject-matter jurisdiction exists in this case. The issue of subject-matter juris-

case in conformity with the procedural requirements for removal. *See, e.g., Carroll v. United Air Lines, Inc.,* 7 F.Supp.2d 516, 519 (D.N.J.1998). In particular, 28 U.S.C. § 1446(b) provides:

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

■ A plaintiff must raise any defect based on the thirty-day time period pursuant to 28 U.S.C. § 1447(c), which provides that "a motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." A court cannot raise *sua sponte* a procedural defect such as the untimeliness of removal based on the thirty-day time period. *In re*

*FMC Corp. Packaging Sys. Div.,* 208 F.3d 445, 446–47, 450–52 (3d Cir.2000).

■ The defendant bears the burden of showing the appropriateness of removal, *see, e.g., Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990); *Carroll,* 7 F.Supp.2d at 519, including the timeliness of the removal itself, *see, e.g., Schnable v. Drexel Univ.,* Civ. A. No. 95–21, 1995 WL 412415, at *3 (E.D.Pa. July 10, 1995); *Groh v. Groh,* 889 F.Supp. 166, 169–70 (D.N.J.1995) (citations omitted). Congress' intention that cases be removed at the earliest possible moment should govern the Court's evaluation. *Cf., e.g., Foster v. Mut. Fire, Marine & Inland Ins. Co.,* 986 F.2d 48, 53 (3d Cir.1993) (quoting *Rowe v. Marder,* 750 F.Supp. 718 (W.D.Pa. 1990)), *aff'd,* 935 F.2d 1282 (3d Cir.1991) (unpublished table decision); *Schnable,* 1995 WL 412415, at *3 (quoting *Foster,* 986 F.2d at 53). The Court must also strictly construe the removal statutes against removal and resolve any doubts in favor of remand. *See, e.g., Boyer,* 913 F.2d at 111 (quotation omitted); *Carroll,* 7 F.Supp.2d at 519 (quoting *Boyer,* 913 F.2d at 111).

Entrekin's Notice of Intent to file a motion to remand was filed on September 29, 2000 (Notice of Intent filed 9–29–00), within thirty days of the filing of the Notice of Removal on September 1, 2000. (Notice of Removal.) Entrekin's motion therefore satisfies the thirty-day requirement of 28 U.S.C. § 1447(c). *See* L. Civ. R. 7.1(b). Therefore, the Court will proceed to consider whether Fisher Scientific filed its Notice of Removal within the thirty-day period mandated by the two paragraphs of 28 U.S.C. § 1446(b).

diction, however, may still be raised by motion or by the Court itself. *See Crowell v. Gen. Elec. Co.,* No. CIV.A. 97–127, 1997 WL 56922, at *2 n. 2 (E.D.Pa. Feb. 10, 1997) (stating that Court's ruling is limited to plaintiff's timeli-

ness argument because plaintiff did not raise subject-matter jurisdiction question but observing that plaintiff and Court are free to contest subject-matter jurisdiction in future).

**I. *The First Paragraph of 28 U.S.C. § 1446(b) and "Initial Pleading"***

Entrekin argues that its Verified Complaint triggered the removal period as an initial pleading because its claims "state to a 'substantial degree of specificity' that a basis for federal [jurisdiction] exists." (Pl.'s Br. at 18.) Entrekin contends that the Verified Complaint:

> details with great specificity how, as a direct result of Defendant's actions, Plaintiff was threatened with termination, was kept out of work far in excess of seven months (a loss of more than $20,000 in back pay),[10] that Plaintiff suffers severe emotional distress exacerbating her mental disability, that termination caused plaintiff to risk losing her benefits, and as a result of these injuries, Defendant was responsible to Plaintiff for compensatory and punitive damages.

(*Id.* at 18–19 (footnote added).) Entrekin further emphasizes that, on July 12, 2000, its motion for counsel fees in an amount over $10,000.00 was pending before the Superior Court. (*Id.* at 19.) Entrekin apparently contends that Fisher Scientific's supposed July 13, 2000 settlement offer of between $75,000.00 and $100,000.00 and the settlement options in excess of $75,000.00 proposed at the August 31, 2000 mediation session demonstrate that Fisher Scientific knew from the Verified Complaint that the amount in controversy exceeds $75,000.00. (*Id.* at 19; *see also* Pl.'s Reply Br. at 1–3.) If the Court accepts Entrekin's argument, Fisher Scientific would have had to file its Notice of Removal within thirty days of the presumed service upon Fisher Scientific of the Verified Complaint and Summons. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 347–348, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999) (stating that time to remove is triggered by simultaneous service of summons and complaint or receipt of ·complaint after service of summons). While the Verified Complaint was filed on or about May 23, 2000 (Verified Compl.), the Notice of Removal was not filed until September 1, 2000 (Notice of Removal). Presumably, the Verified Complaint, as well as the Summons, was properly served or received by Fisher Scientific soon after filing,[11] and, under Entrekin's theory, Fisher Scientific's removal therefore was untimely.

Fisher Scientific responds that Entrekin's argument is contrary to recent case law from both the Third Circuit and this district. (Def.'s Br. at 4–9.) According to Fisher Scientific, the thirty-day period only begins to run when the pleading explicitly informs the defendant, to a substantial degree of specificity, that a specific amount of damages is sought, presumably in excess of $75,000.00, or contains a specific allegation that the damages exceed the diversity jurisdiction threshold, with any analysis beginning and ending with the actual language of the pleading itself. (*Id.* at 5–8.) It also argues that the Verified Complaint fails to allege any serious physical injury but "merely alleges vague, non-descript 'emotional distress'" (*id.* at 8) and that the Verified Complaint is not the only filing prior to removal, with the removal itself based on Entrekin's Statement of Damages (*id.* at 6).[12]

---

10. The Court notes that the Verified Complaint itself does not allege any specific amount.

11. Neither party provides any detail concerning the service or receipt of the Verified Complaint by Entrekin. The Court assumes that the Verified Complaint and Summons were properly served upon the Defendant.

12. The Court further notes that Fisher Scientific contends that the Flaum Affidavit contains argumentative statements regarding the

In order to determine whether Entrekin's Verified Complaint triggered the thirty-day period, the Court must turn to the Third Circuit's decision in *Foster v. Mutual Fire, Marine & Inland Insurance Co.*, 986 F.2d 48 (3d Cir.1993). In this case dealing specifically with questions raised by Pennsylvania procedural law, the Third Circuit developed a standard for determining when the time period commences under at least the first paragraph of 18 U.S.C. § 1446(b). *Foster*, 986 F.2d at 50–54. In *Foster*, the plaintiff asserted that the receipt of a summons giving the defendant notice of federal jurisdiction as well as a subsequent discussion between the parties triggered this time period. *Id.* at 50–51. The *Foster* court observed that most district courts within the Third Circuit had split into two apparently opposing ways of implementing and defining the meaning of an "initial pleading" in the first paragraph of 28 U.S.C. § 1446(b). *Id.* at 51–52. Some courts had embraced a subjective inquiry or knowledge approach focusing, not so much on the documents, but the defendant's knowledge. *Id.* at 51–52 (discussing *Nero v. Amtrak*, 714 F.Supp. 753 (E.D.Pa.1989); *Presidential Dev. & Inv. Corp. v. Travelers Ins. Co.*, CIV. A. No. 89–6278, 1989 WL 147616 (E.D.Pa. Dec. 5, 1989); *Moore v. City of Philadelphia*, CIV. A. No. 88–1424, 1988 WL 50382 (E.D.Pa. May 16, 1988), *appeal dismissed*, 865 F.2d 251 (3d Cir.1988)). Under this approach, the thirty-day period for removal begins to run "when the defendant learns the case is removable." *Id.* at 51.

Other district courts, however, had interpreted the statutory provision very narrowly and concluded that "a praecipe and writ of summons can never together constitute an initial pleading." *Id.* at 52 (discussing *Miles v. Pepsi–Cola Metro. Bottling Co.*, Civ A. No. 91–7922, 1992 WL 30549 (E.D.Pa. Feb. 11, 1992); *Zawacki v. Penpac, Inc.*, 745 F.Supp. 1044 (M.D.Pa. 1990); *Katz v. Aetna Cas. & Sur. Co.*, CIV. A. No. 89–2145, 1989 WL 46062 (E.D.Pa. Apr. 25, 1989); *Craig v. Lake Asbestos of Que., Ltd.*, 541 F.Supp. 182 (E.D.Pa.1982); *Campbell v. Associated Press*, 223 F.Supp. 151 (E.D.Pa.1963).)

The Third Circuit, however, rejected both views and adopted the approach developed in *Rowe v. Marder*, 750 F.Supp. 718 (W.D.Pa.1990), *aff'd*, 935 F.2d 1282 (3d Cir.1991) (unpublished table decision). *Foster*, 986 F.2d at 53–54. The Third Circuit held that "when a writ of summons, a praecipe, or of course a complaint provides adequate notice to defendant of federal jurisdiction, the thirty-day period is triggered." *Id.* at 49. Quoting the *Rowe* court, the Third Circuit explained:

> [The Court] need not inquire of extraneous documents. The inquiry begins and ends within the four corners of the pleading. The inquiry is succinct: whether the document informs the reader to a substantial degree of specificity, whether all the elements of federal jurisdiction are present.

*Id.* at 53 (quoting *Rowe*, 750 F.Supp. at 721 (citations omitted).) According to the

---

employment relationship between Fisher Scientific and Entrekin in violation of Local Civil Rule 7.2. (Def.'s Br. at 2 (citing Flaum Aff. ¶¶ 1, 6–9.)) Local Civil Rule 7.2(a) provides: Affidavits shall be restricted to statements of fact within the personal knowledge of the affiant. Argument of the facts and the law shall not be contained in affidavits. Legal arguments and summations in affidavits will be disregarded by the Court and may

subject affiant to appropriate censure, sanctions or both.

Fisher Scientific denies any allegations of wrongdoing. (Def.'s Br. at 2.) This claim of improper argument in the affidavit appears possibly relevant to both paragraphs of 28 U.S.C. § 1446(b), but, because of the disposition of this motion, the Court does not need to decide whether Flaum violated Local Civil Rule 7.2(a).

Third Circuit, "the relevant test is not what the defendants purportedly knew, but what these documents said." *Id.* at 54. The Third Circuit also approved of the *Rowe* court's exclusion of correspondence from consideration, *id.* at 53, and explicitly adopted the requirement that "at a minimum anything considered a pleading must be something of the type filed with a court," *id.* (quoting *Rowe,* 750 F.Supp. at 721 n. 1).

We have reviewed the decisions in the United States District Court for the District of New Jersey expressly applying the *Foster* standard. *See Carroll v. United Air Lines, Inc.,* 7 F.Supp.2d 516, 520–23 (D.N.J.1998); *Garofalo v. Medtronic, Inc.,* No. Civ.A. 97–1655, 1997 WL 1049566, at *3–5 (D.N.J. June 17, 1997); *Teajman v. Frigoletti,* No. Civ.A.96–4779, 1997 WL 1067639, at *3–5 (D.N.J. Feb. 11, 1997). The decision by Judge Rodriguez in *Vartanian v. Terzian,* 960 F.Supp. 58 (D.N.J. 1997), appears to provide the proper framework of analysis. *Vartanian* held:

> ... [W]here the plaintiff does not or cannot plead damages in a specific dollar amount but wishes the thirty-day period to run from the defendant's receipt of the initial pleading, the plaintiff must place in the initial pleading a specific allegation that damages exceed the minimum federal jurisdictional amount.

*Id.* at 61–62.[13] As the *Vartanian* court observed, *id.* at 61, the Fifth Circuit likewise apparently requires that, for the thirty day period to commence, the pleading must contain "a specific allegation that damages are in excess of the federal jurisdictional amount," *Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 (5th Cir.1992). Recently, the Eighth Circuit joined the Fifth Circuit in finding that "the thirty-day time limit of section 1446(b) begins running upon receipt of the initial complaint only when the complaint explicitly discloses the plaintiff is seeking damages in excess of the federal jurisdictional amount." *In re Willis,* 228 F.3d 896, 896 (8th Cir.2000).

■ The Court finds the reasons advanced by the *Vartanian* court in support of this "bright line rule" to be persuasive, and it therefore adopts its approach. This rule requiring an affirmative allegation promotes certainty and judicial efficiency, *Vartanian,* 960 F.Supp. at 61 (quoting *Chapman,* 969 F.2d at 163), values emphasized by the Third Circuit in *Foster,* 986 F.2d at 53–54. The rule additionally discourages a defendant from removing a case to a federal court prematurely so as to avoid any inadvertent waiver of the right to remove because of the possible expiration of the thirty-day time period. *Vartanian,* 960 F.Supp. at 61 (quoting *Chapman,* 969 F.2d at 163). On the other hand, it protects a defendant from having to remove the case based on a mere "educated guess" and then face a remand because of the lack of sufficient grounds to sustain removal jurisdiction. *Id.* at 61. A defendant should not be so encouraged to seek removal, particularly because a notice of removal is subject to the mandates of Federal Rule of Civil Procedure 11,[14] *see*

---

13. The *Vartanian* court also stated:

> To resolve this tension [between the Third Circuit's requirement and New Jersey's prohibition], we interpret the Third Circuit's "substantial degree of specificity" requirement to mean that the thirty-day removal period does not run from the defendant's receipt of the initial pleading unless the plaintiff has specifically alleged in the initial pleading that the damages sought are in excess of a minimum federal jurisdictional amount.

*Vartanian,* 960 F.Supp. at 61.

14. Federal Rule of Civil Procedure 11 states in relevant part:

> (b) Representations to Court By presenting to the court (whether by signing, filing, submit-

*Miranda v. Southland Corp.*, Civ. A. No. 91–3267, 1991 WL 142648, at *1–3 (E.D.Pa. July 22, 1991). The rule announced in *Vartanian* also combines the *Foster* requirement of adequate notice with New Jersey Court Rule 4:5–2's prohibition against a specific demand for a certain amount of damages in an unliquidated damages claim.[15] *Id.* at 61. Although New Jersey law prohibits the allegation of a specific amount of damages sought, it apparently does not forbid a specific allegation that the damages exceed the federal jurisdictional threshold. *Id.* The Court further notes that other district courts within the Third Circuit have adopted a similar approach, by, for instance, requiring more in a document than boilerplate allegations of severe injuries. *White v. Gould*, Civ. A. No. 91–6531, 1992 WL 7032, at *1–2 (E.D.Pa. Jan. 9, 1992) (finding personal injury complaint seeking damages for such matters as great physical pain and agony, medical and other expenses, and loss of earning power insufficient to start time period); *Miranda*, 1991 WL 142648, at *1–3 (stating that complaint is written in boilerplate language providing no notice as to actual amounts). The Court therefore adopts the rule that, when a plaintiff does not or is unable to plead a specific monetary amount, the initial pleading must include an allegation that damages exceed the minimum federal jurisdictional amount to trigger the time period under the first paragraph of 28 U.S.C. 1446(b).

■ Entrekin's Verified Complaint did not commence the thirty-day time period. The Verified Complaint, pursuant to New Jersey law, lacks any claim for specific monetary amounts. Therefore, the bright-line rule from *Vartanian* applies. No specific allegation that damages exceed the minimum federal jurisdictional amount is present in the Verified Complaint, and, under the *Vartanian* rule, it failed to trigger the time period under the first paragraph of 28 U.S.C. § 1446(b). The Court thus cannot remand this action based on Fisher Scientific's failure to file a notice of removal within thirty days of service of the Verified Complaint and Summons upon Fisher Scientific.

An examination of Entrekin's specific arguments regarding the Verified Complaint does not alter our conclusion that the service of the Verified Complaint did not trigger the thirty-day time period for removal pursuant to the first paragraph of 28 U.S.C. § 1446(b). Entrekin's apparent argument based on Defendant's July 13, 2000 settlement offer, Superior Court orders, motion for counsel fees, and the set-

---

ting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifi-

cally so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(emphasis deleted).

**15.** New Jersey Court Rule 4:5–2 states, in relevant part, that "[i]f unliquidated money damages are claimed in any court, other than the Special Civil Part, the pleading shall demand damages generally without specifying the amount."

tlement options discussed during mediation on August 31, 2000 must be rejected because it is based on the supposed subjective knowledge of Fisher Scientific as to the amount in controversy. (Pl.'s Br. at 19; Pl.'s Reply Br. at 1–3.) The Third Circuit explicitly rejected the so-called "subjective inquiry approach," requiring instead an examination of the content of the documents. *Foster*, 986 F.2d at 53–54.

In terms of the actual content of the Verified Complaint, Entrekin relies on *Horak v. Color Metal of Zurich, Switzerland*, 285 F.Supp. 603 (D.N.J.1968), to support its contention that the Verified Complaint sets forth a basis for federal jurisdiction implicating the thirty-day time period. (Pl.'s Br. at 17–18.) The plaintiff in *Horak* filed an action for unspecified damages arising from injuries allegedly received due to the negligent manufacture and sale of an offset printing press. 285 F.Supp. at 604. The plaintiff sought and obtained a remand based on the time restrictions of 28 U.S.C. § 1446(b). *Id.* at 604–06. This decision, however, occurred before both *Rowe* and *Foster*, *Vartanian*, 960 F.Supp. at 60. The *Vartanian* court also explicitly criticized the decision for its supposed "focus on what the defendant knew or should know from the pleadings and from a comparison with other cases," *id.*, and its requirement that a defendant's removal be

based on "an educated guess that federal jurisdiction exists" without necessarily possessing the grounds to avoid remand when the plaintiff seeks it, *id.* at 61.

The circumstances in *Horak* are also distinguishable. The *Horak* court stated that "there can be no question but that more than [the then-jurisdictional requirement of] $10,000 is at stake" because the complaint alleged the loss of plaintiff's right arm and "such a serious injury would likely, should the defendants be found negligent, warrant a recovery in excess of $10,000." 285 F.Supp. at 606. Entrekin, however, does not allege such a serious injury as dismemberment of a limb. Furthermore, the *Horak* court also rested its remand on an equitable consideration not present in this case. The court stated that, because no other papers had been filed in the case, the defendants necessarily relied on the complaint in alleging in their removal petition that the case involved more than $10,000.00 and thus cannot now deny "the very facts they alleged in their petition for removal." 285 F.Supp. at 606. In this case, however, the Verified Complaint is not the only document resulting from the litigation before the Superior Court, and Fisher Scientific's Notice of Removal is based on the Statement of Damages received August 7, 2000.[16] (Not.

---

16. Although not mentioned by either party, recent decisions from the United States District Court for the District of New Jersey by Judge Lechner do not follow the *Vartanian* approach and appear to place a heavier burden on the removing defendant. In *Carroll v. United Air Lines, Inc.*, 7 F.Supp.2d 516 (D.N.J.1998), Judge Lechner remanded a personal injury case in part because "courts have held that allegations of severe injuries along with pain and suffering will alert [the] defendant that an amount in excess of [the jurisdictional amount] is at issue," *id.* at 521 (alterations in original) (quoting *Turner v. Wilson Foods Corp.*, 711 F.Supp. 624, 626 (N.D.Ga. 1989)). The *Carroll* court also emphasized

that the "burden of proof is on [the] defendant to assess and ascertain the amount in controversy within the 30–day time limit for removal provided in Section 1446(b)." *Id.* at 521 (alteration in original) (quoting *Marler v. Amoco Oil Co.*, 793 F.Supp. 656, 659 (E.D.N.C.1992)), and stressed that the defendant knew or should have known upon receipt of the Complaint that the amount in controversy would meet the requirements for diversity jurisdiction, *id.* at 522 (citing *Turner*, 711 F.Supp. at 626). Judge Lechner earlier adopted the same basic approach used in *Carroll* in two other personal injury cases involving alleged severe injuries. *Garofalo v. Medtronic, Inc.*, No. Civ.A. 97–1655, 1997 WL

of Removal ¶¶ 3–6.) The Court therefore concludes that a consideration of the *Horak* decision does not mandate the remand of this action to the Superior Court.

The Court concludes that, based on the test developed primarily in *Foster* and *Vartanian*, Entrekin's Verified Complaint, as well as documents and matters raised by Entrekin, did not require Fisher Scientific to remove within the thirty-day time period specified in the first paragraph of 28 U.S.C. § 1446(b). The Court therefore must turn to the second paragraph of the statutory provision.

## II. The Second Paragraph of § 1446(b) and "Other Paper."

■ As an alternative basis for remand, Entrekin argues that, even if the case were not removable based on the Verified Complaint, Fisher Scientific's removal was still untimely based on the second paragraph of 28 U.S.C. § 1446(b) and its requirement that a notice of removal be filed within thirty days of the defendant's re-

ceipt "of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Entrekin contends that this second paragraph was satisfied because Fisher Scientific knew on July 13, 2000 that Entrekin seeks damages in excess of the amount in controversy requirement. (Pl.'s Br. at 20–22; Pl.'s Reply Br. at 1–3.) On that date, Wright, then-counsel for Fisher Scientific, supposedly made a settlement offer of approximately $75,000.00 to $100,000.00, which Flaum, Entrekin's counsel, rejected. (Pl.'s Br. at 21; Pl.'s Reply Br. at 1–3; Flaum Aff. ¶ 19.) According to Entrekin, the 30–day time period commenced on the date of the settlement offer and its rejection because this was the point at which "it may first be ascertained that the case is one which is or has become removable," regardless of whether Fisher Scientific actually received "an amended pleading, motion, order, or other paper." (Pl.'s Br. at

---

1049566, at *2–*4 (D.N.J. June 17, 1997); *Teajman v. Frigoletti*, No. Civ.A. 96–4779, 1997 WL 1067639, at *2–*5 (D.N.J. Feb.11, 1997).

The Court, however, adopts the *Vartanian* approach as the preferable method in determining whether a pleading triggers the thirty-day time period. The emphasis placed on the fact that the defendant "knew or should have known" that the amount in controversy requirement would be satisfied, *Carroll*, 7 F.Supp.2d at 523; *Garofalo*, 1997 WL 1049566, at *5; *see also Teajman*, 1997 WL 1067639, at *5, apparently shifts the focus from the proper emphasis, namely on the words of the relevant documents themselves, *Vartanian*, 960 F.Supp. at 60, to the knowledge, either actual or constructive, of the defendant. These three cases also failed to discuss the policy justifications behind the *Vartanian* bright-line rule. In addition, the Court finds that these three cases are distinguishable because they arose in the personal injury as opposed to the employment context and involved allegations of apparently very severe injuries more likely to exceed the jur-

isdictional threshold. *Carroll*, 7 F.Supp.2d at 518, 522; *Garofalo*, 1997 WL 1049566, at *1, *5; *Teajman*, 1997 WL 1067639, at *1, *5. For instance, in *Garofalo v. Medtronic, Inc.*, No. Civ.A. 97–1655, 1997 WL 1049566 (D.N.J. June 17, 1997), the complaint alleged disfigurement, loss of a body organ, member, function or system, and permanent limitation of a bodily function or system preventing the plaintiff from performing usual daily activities, *id.* at *1. *But see, e.g., White*, 1992 WL 7032, at *1–2 (finding personal injury complaint seeking damages for such matters as great physical pain and agony, medical and other expenses, and loss of earning power insufficient to start time period); *Miranda*, 1991 WL 142648, at *1–3 (stating that complaint is written in boilerplate language providing no notice as to actual amounts). In *Carroll*, the complaint further alleged "willful conduct" under the Warsaw Convention, thereby indicating, under the provisions of this treaty, that the amount in controversy exceeded $75,000.00. *Carroll*, 7 F.Supp.2d at 522–23.

21; *see also* Pl.'s Reply Br. at 1–3.) Because the case was not removed within thirty days of July 13, 2000, Entrekin argues that it ought to be remanded to the Superior Court. (Pl.'s Br. at 20–22.)

Although ambiguously, Entrekin also appears to argue that the thirty-day time period was triggered by the motion seeking an award of counsel fees in excess of $10,000.00, orders entered by the Superior Court, the fact that the settlement options suggested by the Mediator on August 31, 2000 exceeded $75,000.00, and unspecified discussions of counsel. (Pl.'s Br. at 19.) In fact, in her reply brief, Entrekin explicitly connects the settlement offer with the case's procedural history by emphasizing that: (1) the parties appeared before the Superior Court on July 12, 2000 for a hearing on Entrekin's Order to Show Cause seeking such relief as job reinstatement, back pay, compensatory and punitive damages, and reinstatement of benefits; (2) the Superior Court spoke with the parties regarding a potential resolution of the action; (3) the parties agreed on or about July 12, 2000 to mediate the dispute and that, during such mediation, Entrekin would be paid her full salary; and (4) an issue arose requiring a tour of Fisher Scientific's Somerville plant. (Pl.'s Reply Br. at 2.)

Fisher Scientific responds to Entrekin's arguments based on the purported settlement negotiations by arguing that any oral communication is irrelevant because of the express statutory requirement of a writing, the prohibition of arguing that, even if a pleading is incomplete, one cannot claim removability and the triggering of the time period based on extraneous matters, and the required emphasis on the language of the pleadings or other relevant papers and not what a defendant knew or should have known about a plaintiff's claims. (Def.'s Br. at 9–14; Def.'s Sur-reply Letter Br. ("Def.'s Sur Reply") at 1–2.) In a subsequent sur-reply letter brief, Fisher Scientific argues that, even if these settlement offers were in writing, settlement communications cannot trigger the removal period. (Def.'s Sur–Reply at 2.) Fisher Scientific also contends that the offer made on its behalf on July 13, 2000 did not specifically concern Entrekin's claims in this action and, instead, involved the potential cost of an annuity to provide her with future income until she qualified for disability retirement benefits, which request was supposedly not raised in Entrekin's Verified Complaint. (Def.'s Br. at 10–11.)

Fisher Scientific also rejects Entrekin's attempt to find other items supposedly triggering the removal period, contending that: (1) the August 31, 2000 mediation session occurred the day before the filing of the Notice of Removal and (2) Entrekin never explains which orders of the Superior Court gave Fisher Scientific notice that Entrekin's damages exceed $75,000.00, claiming that the only monetary claim addressed by the Superior Court's orders was the question of an unspecified amount of back pay, which Fisher Scientific estimates is valued at less than $20,000.00. (Def.'s Br. at 12.) According to Fisher Scientific, even Entrekin's argument that she claims $20,000.00 in back pay and sought counsel fees in excess of $10,000.00 are insufficient to trigger the removal period. (Def.'s Br. at 4, 12.)

The second paragraph of 28 U.S.C. § 1446(b) has generated perhaps even more conflicting decisions and rules than the first paragraph of this statutory provision. Such conflicting issues include whether a document must be filed to be capable of qualifying as an "other paper" and whether a settlement letter may quali-

fy as an "other paper."[17] Although Fisher Scientific argues that a settlement offer cannot be considered as an "other paper" under 28 U.S.C. § 1446(b) and Federal Rule of Evidence 408[18] (Def.'s Sur–Reply at 2), the Court finds it unnecessary to reach this admittedly troublesome question. The Court instead concludes that the type of oral communications involved here, generally made in an informal setting without any transcription or simultaneous reduction to written form about such a matter as settlement negotiations, are incapable of triggering the thirty-day limitation for removal.[19]

Generally, the second paragraph of 28 U.S.C. 1446(b) requires a writing to trigger its thirty-day deadline for removal. Courts have concluded that a variety of oral statements, including settlement negotiations, are insufficient to trigger the time period. *Smith v. Nike Retail Servs., Inc.,* No. Civ.A. 98–1405, 1998 WL 195913, at *2 (E.D.Pa. Apr. 9, 1998) (remanding case partly because "it is irrelevant that plaintiff's counsel allegedly informed defendants' counsel that this action was worth between $75,000 and $125,000."); *Broderick v. Dellasandro,* 859 F.Supp. 176, 178 (E.D.Pa.1994) (stating that "notice must be in writing"); *Stransky v. Am. Isuzu Motors, Inc.,* 821 F.Supp. 1103, 1104 (E.D.Pa. 1993) (apparently rejecting reliance on conversations between counsel and remanding case because of premature re-

moval); *Gottlieb v. Firestone Steel Prods. Co.,* 524 F.Supp. 1137, 1139 (E.D.Pa.1981) ("The 'plain language' of the statute also defies an interpretation that the 'other paper' requirement can be met by reference to conversations between counsel which purportedly discussed plaintiff's apparent de facto dismissal of the non-diverse unknown [defendants]" (citations omitted)); *see also, e.g., Field v. Nat'l Life Ins. Co.,* No. 8:00–CV–989–T–24TBM, 2001 WL 77101, at *9–10 (M.D.Fla. Jan. 22, 2001) (citations omitted); *Polk v. Sentry Ins.,* 129 F.Supp.2d 975, 979 (S.D.Miss.2000) (citations omitted); *Brown v. Richard,* No. CIV. A. 00–1982, 2000 WL 1653835, at *4 (E.D.La. Nov.2, 2000) (citation omitted); *Thomas v. Ritter,* No. 3:98CV530–H, 1999 WL 1940047, at *1–2 (W.D.N.C. Feb. 11, 1999); *Abdishi v. Phillip Morris, Inc.,* No. 98 C 1310, 1998 WL 311991, at *3 & n. 4 (N.D.Ill. June 4, 1998); *King v. Bell & Howell Mail Processing Sys. Co.,* No. 97 C 1303, 1997 WL 285969, at *3 (N.D.Ill. Apr. 24, 1997); *Petersen v. Cates Sheet Metal Indus., Inc.,* No. 95–6216–CV–SJ–6, 1996 WL 40999, at *5 (W.D.Mo. Jan. 30, 1996); *Smith v. Bally's Holiday,* 843 F.Supp. 1451, 1454–55 (N.D.Ga.1994).

The text of the statute and sound policy considerations support such a prohibition against considering most forms of oral communications for purposes of the second paragraph of 28 U.S.C. § 1446(b). The text of the second paragraph of 28 U.S.C.

---

**17.** Both of these related issues have resulted in contradictory rulings. *See, e.g.,* Brian Sheppard, Annotation, *When Does Period for Filing Petition for Removal of Civil Action from State Court to Federal District Court Begin to Run under 28 USCS § 1446(b),* 139 A.L.R. Fed. 331, §§ 15–19 (1997 & Supp. 2000) (gathering cases).

**18.** Federal Rule of Evidence 408 provides in relevant part:
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or

offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible....

**19.** Given the factual circumstances of this case, the Court finds it unnecessary to consider if any oral communications may satisfy the second paragraph of 28 U.S.C. § 1446(b).

§ 1446(b) clearly indicates that the thirty-day time period commences "after receipt by the defendant ... of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Likewise the first paragraph of 28 U.S.C. 1446(b) requires a "copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." [20] This emphasis on a written document demonstrates that an informal oral notification or communication generally does not fall under the statute. *Gottlieb*, 524 F.Supp. at 1139 (citations omitted); *see also Bally's Holiday*, 843 F.Supp. at 1455 ("In addition, this court agrees with the district court in Gottlieb that the plain language of the statute does not leave room to 'wiggle' oral communications into its meaning.") Furthermore, permitting informal oral communications to fall under the statute would create uncertainty, encourage "spin doctoring," as to what was said, and foster disputes and litigation concerning the actual content of these communications, with their non-written nature only aggravating difficulties of proof and increasing the potential of an evidentiary hearing. *See Broderick*, 859 F.Supp. at 178 ("The statutory requirement of a writing reduces disputes over knowledge of diversity or the amount in controversy and helps avoid later battles of credibility between opposing parties and lawyers." (citation omitted).); *see also Thomas*, 1999 WL 1940047, at *2; *Bally's Holiday*, 843 F.Supp. at 1455–56. Finally, the emphasis on a written document helps to prevent the analysis from improperly

shifting from the content of the notice to the actual or constructive knowledge of the defendant. *Cf., e.g., Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 54 (3d Cir.1993) ("[T]he relevant test is not what the defendants knew, but what these documents said."); *Vartanian v. Terzian*, 960 F.Supp. 58, 60–61 (D.N.J.1997) (stating that courts have shifted the focus of the analysis from what defendant knew or should know to analysis of relevant document itself).

Some courts, however, have permitted consideration of oral statements. These decisions, however, are probably best interpreted as recognizing certain narrow exceptions to the general writing requirement. Some courts have held that oral statements are capable of triggering the time period for removability when the oral statements are made in the courtroom. *Hessler v. Armstrong World Indus., Inc.*, 684 F.Supp. 393, 393–95 (D.Del.1988) (finding removal untimely based on letter and counsel statements in state court indicating that plaintiff had settled with non-diverse defendants); *see also, e.g., King v. Kayak Mfg. Corp.*, 688 F.Supp. 227, 230 (N.D.W.Va.1988); *Mike Silverman & Assocs. v. Drai*, 659 F.Supp. 741, 745–47 (C.D.Cal.1987); *Heniford v. Am. Motors Sales Corp.*, 471 F.Supp. 328, 332–37 (D.S.C.1979), *dismissed*, 622 F.2d 584 (4th Cir.1980) (unpublished table decision); *First Nat'l Bank in Little Rock v. Johnson & Johnson*, 455 F.Supp. 361, 362 & n. 1 (E.D.Ark.1978). Other decisions have adopted a similar attitude with respect to deposition testimony. *See, e.g., Huffman*

---

**20.** Although not specifically relevant to our discussion of the second paragraph of the statutory provision, the Third Circuit's requirement that, "at a minimum anything considered a pleading must be something of the type filed with a court," *Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 54 (3d Cir.1993) (quoting *Rowe v. Marder*, 750

F.Supp. 718, 721 n. 1 (W.D.Pa.1990), *aff'd*, 935 F.2d 1282 (3d Cir.1991) (unpublished table decision)), appears to prevent at least an informal oral communication that has not been transcribed or immediately reduced to writing to be considered an "initial pleading" under the first paragraph of 28 U.S.C. § 1446(b).

*v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078–79 (10th Cir.1999). Building on these other cases, it has also been suggested that 28 U.S.C. § 1446's general writing requirement may generally be satisfied when the oral communication is either transcribed or simultaneously reduced to written form. *Bally's Holiday*, 843 F.Supp. at 1455–56. *But see S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996) (rejecting argument by plaintiff that removal was untimely based on affidavit created by defense counsel concerning conversation with plaintiff's counsel about amount of damages because such affidavit was not result of plaintiff's voluntary act).

If interpreted correctly, these decisions announce possibly reasonable exceptions to the general requirement for a writing, although the Court does not adopt these exceptions in this case. Because statements in open court and depositions are generally recorded and transcribed, they are available for examination without necessitating any complex and potentially troublesome dispute over what was actually said. *Bally's Holiday*, 843 F.Supp. at 1454. Even if the statement is not transcribed, the formal setting of the statement, including the possible presence of a judge, certainly ameliorates further conflicts over the content of the statement. *Thomas*, 1999 WL 1940047, at *2 n. 2 (". . . the oral notices were given in court proceedings and/or in the presence of the presiding judge, thereby removing any proof problems regarding who said what at what time." (citations omitted)). It is also possible that the communication, if not recorded and transcribed, could involve a matter that is easily verifiable, such as the dismissal of a defendant. *Bally's Holiday*, 843 F.Supp. at 1455 (distinguishing *Mike Silverman & Assocs.*, 659 F.Supp. at 745–47). A conversation about an easily verifiable matter is certainly more acceptable than a communication about such matters as a settlement offer or rejection.

Even if this case law may be confined within certain narrow exceptions, the Court emphasizes that it rejects the general proposition of at least some of these decisions that an oral notice is sufficient under 28 U.S.C. § 1446(b) in all cases. Although they certainly can be and have been limited to their facts, *see Thomas*, 1999 WL 1940047, at *2 n. 2; *Bally's Holiday*, 843 F.Supp. at 1454–55, these decisions do use language suggesting that oral communications are generally sufficient for purposes of 28 U.S.C. § 1446(b). *See, e.g., Kayak Mfg. Co.*, 688 F.Supp. at 230 ("Authority exists to support the Court's conclusion that a written order is not necessarily a paramount consideration in determining whether a case is ripe for removal."); *Mike Silverman & Assocs.*, 659 F.Supp. at 746 ("Several courts have held, however, that oral statements through which the defendant can ascertain that the action has become removable constitute adequate notice." (citations omitted)); *Heniford*, 471 F.Supp. at 335–36 (apparently contending that writing requirement is mere technicality not preventing removal when defendant has actual notice of dismissal or discontinuance as to resident defendant) (relying on *Powers v. Chesapeake & Ohio Ry. Co.*, 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673 (1898)); *see also Huntsman Chem. Corp. v. Whitehorse Techs., Inc.*, No. 97 C 3842, 1997 WL 548043, at *6 (N.D.Ill. Sept. 2, 1997) (stating that manner in which information allowing defendant to determine removability is acquired is "immaterial"); *Mancari v. AC & S Co.*, 683 F.Supp. 91, 93 (D.Del.1988) ("It is not required that dismissal of the nondiverse defendants be in writing or be formalized [for diversity jurisdiction to exist and the case to be removable]."). Insofar as these decisions adopt this broad approach, the

Court rejects the approach consistent with the above discussion concerning the desirability of a rule generally prohibiting consideration of an oral communication for purposes of the commencement of the removal period under the second paragraph of 28 U.S.C. § 1446(b).

■ Turning to the facts of this case, the Court finds that the purported settlement discussion on July 13, 2000 did not commence the thirty-day filing period under 28 U.S.C. § 1446(b). Fisher Scientific's offer of between $75,000.00 and $100,000.00, even if it were a true offer to settle this litigation, does not satisfy the writing requirement of 28 U.S.C. § 1446(b). An offer on the part of the defendant, as opposed to the plaintiff, also apparently does not implicate the 28 U.S.C. § 1446(b)'s time restriction even if recorded in writing because the statutory provision requires receipt by the defendant, not the plaintiff, of the amended pleading, motion, order, or other paper. *Brown*, 2000 WL 1653835, at *4. Similarly, Entrekin's rejection of this offer does not constitute "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." The purported offer and rejection, made during a plant inspection, and the parties' apparent disagreement over the actual purpose of the offer present a strong example of why oral communications ought to be generally excluded from consideration. Entrekin, in fact, cites no case law in support of its apparent argument that the absence of a writing served on Fisher Scientific on or about July 13, 2000 is irrelevant.

Although not explicitly addressed by either party, the Court finds that any possible exception to the general rule against considering oral communications does not apply in these circumstances. The July 13, 2000 oral statements did not occur in

Court or as part of a deposition. Admittedly, Flaum claims that, at the July 12, 2000 proceedings before the Superior Court, Judge Guterl engaged the parties in "discussions relating to a potential resolution of the matter" and the parties agreed to mediate the dispute, with Entrekin to receive her full salary during such mediation. (Flaum Reply Aff. ¶¶ 5–6.) But these proceedings are insufficient to satisfy the possible exception for in-court statements, particularly given the absence of any indication of what Judge Guterl actually said. The July 13, 2000 statements also were not recorded or immediately transcribed. The supposed "memorialization" of the settlement offer by Entrekin's attorney in a letter did not occur until September 5, 2000, after the removal of this action to this Court. (Flaum Aff. ¶ 19; 9–5–00 Letter.) This letter also apparently was never sent to Fisher Scientific prior to this motion. (Wright Aff. ¶ 15.) A letter written by the plaintiff's attorney after removal certainly cannot satisfy the statutory requirement of an "other paper" under 28 U.S.C. § 1446(b). The Court therefore concludes that Fisher Scientific's removal was not untimely based on the July 13, 2000 conversation and its surrounding circumstances.

■ The Court further rejects Entrekin's apparent argument that the thirty-day time period was triggered by her motion seeking an award of counsel fees in excess of $10,000.00, orders entered by the Superior Court, unspecified discussions between counsel, and settlement options from the August 31, 2000 mediation session. Although not clear from Entrekin's brief, this argument appears based, at least in part, on the second paragraph of 28 U.S.C. § 1446(b). (*See* Def.'s Br. at 12–14.) An examination of the documents generated by the Superior Court's proceedings, however, does not reveal any

"amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

▮ Entrekin does not clearly indicate the standards to be used in interpreting these documents, although it may be presumed that she contends that the approach in *Horak v. Color Metal of Zurich Switzerland,* 285 F.Supp. 603 (D.N.J.1968), should be used. (Pl.'s Br. at 17–19.) Fisher Scientific, on the other hand, appears to favor application of the more contemporary approach actually adopted by the Court for its analysis of Entrekin's Verified Complaint under the first paragraph of 28 U.S.C. § 1446(b). The Court adopts the general approach it used to apply the first paragraph of 28 U.S.C. § 1446(b), especially the Third Circuit's decision in *Foster v. Mutual Fire, Marine & Inland Insurance Co.,* 986 F.2d 48 (1993), and Judge Rodriguez's approach in *Vartanian v. Terzian,* 960 F.Supp. 58 (D.N.J.1997), although it acknowledges that, in certain circumstances, the second paragraph of the statutory provision may call for a different analysis.

Policy justifications and case law supports the general application of the *Foster* standard as applied by *Vartanian* to the second paragraph of the statutory provisions. Such concerns as judicial efficiency and the discouragement of premature removal on educated guesses apply equally to the latter half of the statutory provision. *See infra* part I. Cases from within the Third Circuit have also expressly applied *Foster* to the second paragraph of 28 U.S.C. § 1446(b). *See, e.g., Textile Chem. Co. v. Aetna Cas. & Surety Co.,* No. CIV.A. 97–2142, 1997 WL 537408, at *2 (E.D.Pa. Aug. 5, 1997); *McBride v. Rey,*

No. Civ.A. 97–3276, 1997 WL 416265, at *5 (E.D.Pa. July 8, 1997). Admittedly, the *Foster* court was explicitly confronted by the first paragraph's initial pleading requirement as opposed to the apparently broader "amended pleading, motion, order or other paper" requirement in the second paragraph of the statutory provision.[21] *Foster,* 986 F.2d at 50–54. One possible area of difference is whether documents that are unfiled or incapable of filing, which clearly cannot be considered initial pleadings, *see, e.g., Foster,* 986 F.2d at 53, also are not capable of constituting "other paper" under the second paragraph of 28 U.S.C. § 1446(b). *Compare, e.g., Textile Chem. Co.,* 1997 WL 537408, at *2 (finding letter fails to constitute "other paper" under *Foster* and *Rowe* ), *and McBride v. Rey,* 1997 WL 416265, at *5 & n. 2 (concluding pre-filing settlement demand letter is not "other paper"), *with Broderick,* 859 F.Supp. at 178–80 (finding removal untimely based on correspondence concerning plaintiffs' residence). *See also Liberty Mut. Ins. Co. v. Ward,* 48 F.3d 742, 756 n. 6 (3d Cir.1995) (Becker, J., dissenting) ("*Foster* resolved only the question of what constituted 'pleadings' and did not define 'other paper'. . . .") This troublesome question, however, does not need to be resolved because the orders of the Superior Court fall under the plain language of 28 U.S.C. § 1446(b) and any other documents, even if they should not be considered because they were not or cannot be filed, clearly do not trigger the thirty-day time period given their actual content.

Perhaps more importantly, it appears that certain aspects of the Court's test, such as *Vartanian*'s requirement of a specific allegation that damages exceed the jurisdictional amount, *Vartanian,* 960

---

**21.** The *Foster* court did refer to both a "subsequent discussion between the parties," 986 F.2d at 51, and "correspondence accompanying the summons," *id.* at 53, leaving the actual factual circumstances of the case less than clear.

F.Supp. at 61–62, must be modified to take into consideration that the second paragraph of 28 U.S.C. § 1446 encompasses more than just pleadings. The Court therefore concludes that, in order for a document to trigger the commencement of the time period under the second paragraph of 28 U.S.C. § 1446(b), the document must clearly indicate that the amount in controversy exceeds $75,000.00, by, for instance, stating that the plaintiff seeks over $75,000.00 in damages. *Cf. Vartanian,* 960 F.Supp. at 62 (finding statement of damages was "other paper" from which defendant could first ascertain removability); *Rahwar v. Nootz,* 863 F.Supp. 191, 192 (D.N.J.1994) (same).

Applying these principles to the documents from the proceedings before the Superior Court, the Court finds that none of these documents so clearly indicates that the amount in controversy exceeds $75,000.00 so as to trigger the thirty-day time period. Entrekin herself does not really explain how "Orders of the state court" commenced the mandatory removal period. (Pl.'s Br. at 19.) In fact, Entrekin actually argues that these "Orders of the state court," together with the Verified Complaint, "discussions of counsel," and the August 31, 2000 mediation conference demonstrate that "Defendant unquestionably knew that damages exceeded the federal jurisdictional amount as of July 13, 2000." (*Id.*) As already discussed, this focus on Fisher Scientific's subjective knowledge is inappropriate. *See, e.g., Foster,* 986 F.2d at 54. In addition, the discussions at the August 31, 2000 mediation session certainly cannot justify the remand of this action because the removal occurred a mere one day after this media-

tion. (Notice of Removal.) Focusing specifically on the content of the orders served or received more than thirty days prior to Fisher Scientific's removal of this action, the Court finds that they generally grant, at least temporarily, some of the relief sought in the Verified Complaint. (6–5–00 Order; 6–13–00 Order; 7–3–00 Order.) For instance, in the 6–5–00 Order, Judge Guterl required Fisher Scientific to show cause why Entrekin should not be immediately reinstated to her position, retroactively receive back pay to December 1, 1999, and cease and desist any discriminatory acts against Entrekin. (6–5–00 Order at 1–2.) This relief is almost identical to the relief sought in the Verified Complaint (Verified Compl. Counts One, Two, Three, Four), which the Court already found insufficient to trigger the time period under the first paragraph of the statutory provision. *See infra* part I. The other orders do not add any further detail necessary to commence the removal period.[22] (6–13–00 Order at 1–2; 7–3–00 Order at 1–2.) The one specific amount given in Entrekin's brief of at least $20,000.00 in back pay, which does not expressly appear in any document, is also insufficient to require the remand of this case to the Superior Court.

Moving beyond Entrekin's explicit arguments and considering other documents submitted to us, the Court concludes that, like the orders, these items did not commence the thirty-day removal period. Entrekin's briefs, in support of the Order to Show Cause with temporary restraints and litigants rights motion respectively, do not state or otherwise clearly indicate that the amount in controversy exceeds $75,000.00. (Pl.'s Order to Show Cause Br.; Pl.'s Liti-

**22.** The Court notes Entrekin argues that the Order to Show Cause sought such relief as compensatory and punitive damages. (Pl.'s Reply Br. at 2; Flaum Reply Aff. ¶ 4.) However- er, none of the orders even refer to compensatory or punitive damages. (6–5–00 Order; 6–13–00 Order; 7–3–00 Order.)

gant Rights Br.) The affidavits of Entrekin and Dr. Rowley likewise do not actually add to the Verified Complaint for purposes of the second paragraph of 28 U.S.C. § 1446(b). (Entrekin Aff; Dr. Rowley Aff.)

■ Entrekin's final argument based on the litigants rights motion supposedly seeking an award of counsel fees in excess of $10,000.00 also fails. Attorneys' fees and costs are generally excluded from the amount in controversy calculations unless they are available under a statute or contractual provision. *See, e.g., Penn v. Wal–Mart Stores, Inc.,* 116 F.Supp.2d 557, 568 (D.N.J.2000); *Irving v. Allstate Indem. Co.,* 97 F.Supp.2d 653, 656 n. 5 (E.D.Pa. 2000). Even assuming the existence of a proper statutory provision, the Court finds this claim to be insufficient to have started the thirty-day time period.

■ After a full consideration of Entrekin's arguments, the relevant case law, and the documentation submitted to the Court, the Court concludes that Fisher Scientific's removal was not untimely under the second paragraph of 28 U.S.C. § 1446(b). Although not addressed by the plaintiff, it is still necessary to consider the actual basis of this removal. Fisher Scientific based the removal on Entrekin's Statement of Damages given pursuant to New Jersey Court Rule 4:5–2,[23] dated August 1, 2000 and served on August 7, 2000, in which Entrekin demands damages of $1,000,000.00 per claim. (Statement of Damages; Notice of Removal ¶ 3; Def.'s Br. at 8.) In *Vartanian v. Terzian,* 960

F.Supp. 58 (D.N.J.1997), and *Rahwar v. Nootz,* 863 F.Supp. 191 (D.N.J.1994), the district court concluded that it is entirely proper to remove an action based on a statement of damages pursuant to New Jersey Court Rule 4:5–2. *Vartanian,* 960 F.Supp. at 62 & n. 1; *Rahwar,* 863 F.Supp. at 191–92. The Statement of Damages clearly states that the amount in controversy exceeds $75,000.00, and Fisher Scientific removed this action on September 1, 2000, within thirty days of its receipt of the Statement of Damages. The removal therefore was timely.

## CONCLUSION

For the reasons stated in this opinion, the Court rejects Entrekin's contention that Fisher Scientific's removal of this action was untimely under 28 U.S.C. § 1446(b). The Court therefore will not remand this action to the Superior Court, and it denies Entrekin's motion. This resolution likewise requires the denial of Entrekin's request for counsel fees and costs pursuant to 28 U.S.C. § 1447(c).[24]

---

23. New Jersey Court Rule 4:5–2 provides, in relevant part, that "[u]pon service of a written request by another party, the party filing the pleading shall within 5 days after service thereof furnish the requesting party with a written statement of the amount of damages claimed, which statement shall not be filed except on court.order."

24. 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Because the Court denies Entrekin's motion to remand, it certainly cannot award attorney fees and costs incurred because of the removal to Entrekin.